WILLIAM B. MILLS, as Administrator, etc., Appellant, v. FRANCIS R. HOFFMAN, Respondent.

In proceedings before a surrogate to compel an accounting, by an executor, instituted prior to September 1, 1880, a hearing was had and a decree rendered, after that time, which was appealed from. The appellant, at the close of the evidence, requested the surrogate to find upon certain questions of fact, as provided by the Code of Civil Procedure (§ 2545), which he refused. *Held*, that an exception to the refusal was not well taken ; as, by the said Code (§ 3347, subd. 11), all proceedings pending in Surrogate's Court on that date are exempted from the operation of any of the provisions of the chapter (18) containing said provision.

In an action brought by a legatee against the other beneficiaries, and the heirs at law and next of kin of the testator, and against an administrator, with the will annexed, for the purpose of determining, among other things, the rights of the parties in the estate, and for an accounting by the administrator, and payment by him, to the parties entitled, of the amount found in his hands; judgment was rendered determining those questions and adjudging that upon compliance with the provisions of the judgment by the administrator he should be discharged from all claims and demands. A guardian *ad litem* was appointed in said action for an infant who, with her general guardian, was made a party defendant, and by the judgment she was adjudged to be entitled to a certain sum out of the funds in the hands of the administrator. The latter fully performed all the requirements of said judgment, paying over the share of said infant to her general guardian, and was thereupon discharged from such administration. After said infant became of age, with full knowledge of the terms of the judgment, she received from her general guardian the moneys so paid to him, and also other moneys which the judgment required other defendants to pay to her, and which they had previously paid in compliance therewith to said guardian. She also commenced proceedings to vacate said judgment upon the ground that the appoint-

ment of the guardian *ad litem* was irregular, and an order was granted vacating the same, so far as she was concerned. Four years after the payment so made to her she commenced proceedings before the surrogate to compel said administrator to account. *Held,* that the proceedings "were not maintainable ; that assuming the judgment has, so far as the petitioner is concerned, been deprived of any force as an adjudication of the question involved, she could and did, by acceptance of the moneys paid, ratify the acts of the general guardian and estopped herself from controverting either the judgment or the settlement made thereunder.
A party may not enjoy the rights awarded to him by a judgment and deny its force as an adjudication

*Mills* v. *Hoffman* (26 Hun, 594), reversed.

(Argued March 14, 1883 ; decided April 17, 1883.)

APPÉAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 8, 1882, which affirmed a decree of the surrogate of the county of Cayuga, in proceedings to compel an accounting by William B. Mills, as administrator, with the will annexed, of David N. Follett, deceased. (Reported below, 26 Hun, 594.)

The material facts are stated in the opinion.

*H. V. Howland* for appellant. The respondent, by acceptance of the moneys paid, ratified the acts of her general ¹guardian and estopped herself from controverting either the judgment or the settlement made thereunder. (Bigelow on Estoppel, 16 ; *City B'k* v. *Hopkins,* 2 Dana [Ky.], 395 ; *Borrowseale* v. *Tuttle,* 5 Allen, 377 ; *Foote* v. *Essex Co.,* 7 Wall. 107 ; *Talbot* v. *Todd,* 5 Dana [Ky.], 193 ; *Le Guen* v. *Gouverneur,* 1 Johns. Cas. 492, note ; *Danber* v. *Prentice,* 22 Wis. 311 ; *Parkhurst* v. *Sumner,* 23 Vt. 588 ; *Chesapeake Co.* v. *Gittings,* 36 Md. 276 ; *Philon* v. *Gardner,* 43 Cal. 306 ; *Maloney* v. *Horan,* 49 N. Y. 111 ; *Petersire* v. *Thomas,* 28 Ohio St. 596 ; *Whitcomb* v. *Williams,* 4 Pick. 228 ; *King* v. *Chase,* 15 N. H. 13 ; *Blockinton* v. *Blockinton,* 113 Mass. 231 ; *Matter of Place,* 1 Redf. Surr. 276 ; 3 Pick. 365 ; 10 id. 77 ; Bigelow on

Estoppel, 511; *Deford* v. *Mercer*, 24 Iowa, 118; *Pursley* v. *Hays*, 17 id. 310; Bigelow on Estoppel, 514; *Duff* v. *Wyncoop*, 74 Penn. St. 300; Bigelow on Estoppel, 511; *Sherman* v. *McKeon*, 38 N. Y. 266; *Wood* v. *Seely*, 32 id. 105; *O'Conor* v. *Varney*, 10 Gray, 231; Bigelow on Estoppel, 516; *Lewis* v. *Maloney*, 12 Hun, 207; Freeman on Judgments, § 104; *Rogers* v. *King* 8 Paige's Ch. 209.) Respondent must be bound by the acts of her guardian in this matter, and she is now estopped from requiring Mills to stand the loss sustained by a failure of an investment which she through her guardian requested and advised him to hold. (*Dakin* v. *Dunning*, 6 Paige, 95.) At any rate Mills must be considered as acting reasonably, and that he was justifiable in holding stock which he and people generally considered good, when he was advised and requested so to do by the parties in interest. (*Higgins* v. *Whitson*, 20 Barb. 141; *Litchfield* v. *White*, 7 N. Y. 438; *McRae* v. *McRae*, 3 Bradf. Surr. 199; *Thompson et al.* v. *Brown*, 4 Johns. Ch. 619; *Loud* v. *Minot*, 20 Pick. 116; *Rowth* v. *Howell*, 4 Johns. Ch. 629; *Knight* v. *Earl of Plymouth*, 3 Atk. 480.) There has been no gross negligence, collusion, fraud or unreasonable delay in collecting shown. (*Ruggles* v. *Sherman*, 14 Johns. 466; *Marvin* v. *Stone*, 2 Cowen, 781; *Moore's Estate*, 1 Tuck. 41.)

*Charles M. Baker* and *Amasa J. Parker* for respondent. The surrogate had jurisdiction of the subject-matter, and Mills' appearance without any objection waived all objections to irregularities, and to jurisdiction over his person. (1 Abb. Dig. [new ed.] 219, § 64; *McCormick* v. *Penn. Central R. R. Co.*, 49 N. Y. 308–9; *Burt* v. *Trustees of Lockport*, 3 id. 200.) The judgment which has been (as to the respondent) set aside on motion in the Supreme Court on the ground that no guardian *ad litem* was properly appointed for her therein, cannot be used as a shield to protect Mills from rendering an account of his proceedings to respondent. (*Wells* v. *Thornton*, 45 Barb. 391; *Simpson* v. *Hornbeck*, 3 Lans. 53, 55.) The

orders setting aside the judgments settled the rights of the parties (Mills and respondent) as to the effect of the judgment and were conclusive between them. (*Dwight* v. *St. John*, 25 N. Y. 203, 205–7; *Demarest* v. *Darg*, 32 id. 281, 287–290; *Embury* v. *Conner*, 3 id. 522; *White* v. *Coatsworth*, 6 id. 143.) The judgment having been set aside, it could not protect Mills from an accounting, nor act as an estoppel against the respondent. ( *Wells* v. *Thornton*, 45 Barb. 391, 394; *Simpson* v. *Hornbeck*, 3 Lans. 53, 55; *Smith* v. *Frankfield*, 77 N. Y. 415; *Wood* v. *Jackson*, 8 Wend. 36; *Hall* v. *Andrews*, 65 N. Y. 572.) It appearing upon the face of the record that the judgment was irregular as to Frances and obtained by false affidavits, the court never obtained jurisdiction of Frances, and the judgment was void as to her. (Freeman on Judgments, § 116, p. 87; id., § 117; *Wells* v. *Thornton*, 45 Barb. 391, 394; *Simpson* v. *Hornbeck*, 3 Lans. 53, 55; *Smith* v. *Frankfield*, 77 N. Y. 414, 419; *Wood* v. *Jackson*, 8 Wend. 10, 36; *Hall* v. *Andrews*, 65 N. Y. 572; *Dwight* v. *St. John*, 25 id. 203, 205–7; *Demarest* v. *Darg*, 32 id. 281, 287–290.) Surrogates' Courts have concurrent jurisdiction with the Court of Chancery to call executors to an account, and the pendency of an action for an accounting between some of the legatees or heirs against the administrator is no bar to prevent another heir or legatee from calling him to an account before the surrogate until the first suit has proceeded to a judgment or decree. (*Rogers* v. *King*, 8 Paige, 210, 212; *In re Hood Estate*, 15 N. Y. W. Dig. 333, 334; *Grochen* v. *Lyon*, 16 Barb. 461, 466–8; *Geery* v. *Webster*, 11 Hun, 428, 430.) As Mills has never paid to any one the amount which he should have received from the notes and bank stock, he stands as to that as though he had never accounted to any one, and he is not asked to pay any more than he would have been held to pay if there had been no settlement with Follett, Colvin and Beach. (*Maloney* v. *Horan*, 49 N. Y. 111, 115–117.) Mills should have disposed of the stock, and his holding of it was negligence. (*Baskin* v. *Baskin*, 4 Lans. 94; *Schultz* v. *Pulver*, 11 Wend. 361; *Hasler* v. *Hasler*, 1 Brad. 251; *Mat-*

*ter of Gray*, 27 Hun, 458; 4 Lans. 94; *Ormiston* v. *Olcott*, 24 Hun, 270, 272–3; *S. C.*, 84 N. Y. 339; *Ackerman* v. *Emott*, 4 Barb. 626; 2 Kent's Com. 416 [note *b*]; McLellan's Probate Practice, 213; *Bullock* v. *Wheatly*, 1 Collyer [130 Eng. Rep.]; *King* v. *Talbot*, 40 N. Y. 76; *Adair* v. *Brimmer*, 74 id. 550–1; *Ormiston* v. *Olcott*, 84 id. 343, 345; Dayton on Surrogates [2d ed.], 481–4; [3d ed.], 519; Wms. on Exrs. 1815–1816; *Lacey* v. *Davis*, 4 Redf. Surr. 406; *Schultz* v. *Pulver*, 11 Wend. 361; *Lawson* v. *Copeland*, 2 Brown's C. C. R. 156 [Eng. Rep.]; *Caffrey* v. *Darby*, 6 Ves. 487, 494–6; *Brazer* v. *Clark*, 5 Pick. 96–97; *Baskin* v. *Baskin*, 4 Lans. 94; *King* v. *Tabor*, 40 N. Y. 76; 2 Bouvier's Inst. 477; *Lacey* v. *Davis*, 5 Redf. Surr. 311; McClellan's Surr. [2d ed.] 433; *Gillespie* v. *Brooks*, 2 Redf. Surr. 349; Wms. on Exrs. [3d Am. ed.] 1535–6–7–8, 1542–1547; *Powell* v. *Evans*, 5 Vesey, 843–844; *Phillips* v. *Phillips*, 2 Freeman [Eng. Rep.], 11; *Tebbs* v. *Carpenter*, 1 Maddock's Ch. 166; *Eagleston & Coventry* v. *Kingston*, 8 Vesey, 466, 467; *Schultz* v. *Pulver*, 11 Wend. 361–5; *Leggett* v. *Leggett*, 24 Hun, 334–5; Story's Eq. Jur., §§ 1274–5.) Such acts of negligence or careless administration as defeat the rights of the parties entitled to distribution amount to a *devastavit*, for if persons accept the trust of executor they must perform it. They must use due diligence and not suffer the estate to be injured by their neglect. (*Hollister* v. *Burnett*, 14 Hun, 293; Dayton on Surrogates [3d ed.], 519; 2 Wms. on Exrs. 1543; *Brown's Accounting*, 16 Abb. Pr. [N. S.] 466; 5 Pick. 96; Dayton on Surrogates [1st ed.], 218; *Piety* v. *Stacy*, 4 Vesey, 622; *King* v. *Talbot*, 40 N. Y. 76; Dayton on Surrogates [2d ed.], 488; Wms. on Exrs. 1567; Redfield's Law and Practice, 501; 4 Lans. 94; 11 Wend. 361–5; *Matter of Gray*, 27 Hun, 458.) Administrators are held liable for loss arising from insolvency or otherwise where they negligently permit assets to remain on personal security longer than absolutely necessary, even if taken during the life of the testator. (*Smith* v. *Smith*, 4 Johns. Ch. 285; 2 Wms. on Exrs. 1536; *Hollister* v. *Burritt*, 14 Hun, 211, 292–

293; *Matter of Foster*, 15 id. 392; *Schultz* v. *Pulver*, 11 Wend. 361; *Powell* v. *Evans*, 5 Vesey, 844.) Mills was not a trustee in the strict legal sense. He was not authorized to retain the stock for any purpose. He should have immediately proceeded to collect the debts and turn the stock into cash and distribute it among the distributees. (84 N. Y. 345.) The investment by Oglesbie was not authorized, and Mills by taking the notes made the investment his own, and if loss followed he should be held liable. (22 Hun, 270, 272–3; 4 Lans. 93–4; *Moore's Estate*, 1 Tuck. 41; 11 Wend. 361–5; *Hollister* v. *Burritt*, 14 Hun, 293; McClellan's Probate Practice, 213.) Good faith and honest intentions will not protect an executor when he departs from prudential rules. (*Bogart* v. *Van Velsor*, 4 Edw. Ch. 718–19; *In the Matter of Ross*, 87 N. Y. 514; *Davis* v. *Clark*, id. 623.)

RUGER, Ch. J.   This case comes here upon an appeal from the judgment of the General Term, affirming a decision of the surrogate of Cayuga county in favor of the petitioner, Frances Hoffman.

The proceeding was commenced before the surrogate by petition filed in May, 1880, by one of the next of kin, to compel an accounting by an administrator, and was heard from time to time until the 31st day of May, 1881, when he rendered the decree appealed from.

The case shows that the appellant, at the close of the evidence, requested the surrogate to find upon certain questions of fact in accordance with the provisions of section 2545 of the Code of Civil Procedure, and he having refused to so find except as such facts were embodied in his decree, the appellant excepted to such refusal.   We think this exception was not well taken.

By subdivision 11 of section 3347 of the Code of Civil Procedure all proceedings pending in Surrogates' Courts upon the 1st day of September, 1880, were especially excepted from the operation of any of the provisions contained in chapters 14, 15, 16, 17, 18, 19 and 20 of such Code.   Section 2545,

Opinion of the Court, per RUGER, Ch. J.

being a part of chapter 18 and thus excepted, did not, therefore, apply to this proceeding.

But we are further asked to review the conclusions reached by the surrogate upon the uncontradicted evidence in the case upon exceptions taken thereto by the petitioner.

In order to present these questions clearly a statement of the circumstances out of which this controversy arises is necessary.

The petitioner claims as one of the heirs at law and next of kin to David N. Follett, deceased. Follett died on the 13th day of May, 1854, leaving a large estate, consisting of both real and personal property. In 1851, he made his will, by which he devised and bequeathed the whole of his property to his wife, Mary A. Follett, and his eight children, Charles P., David, James A., Triphena, Amelia, Mary, Fidelia M. and Fanny Jane Follett, who were born prior to the execution of the will. Preston Thompson, Jesse H. Foreman and Lee Oglesbie were named as his executors. The petitioner, whose maiden name was Frances R. Follett, was born in October, 1853, after the execution of the will, and so far as her rights were concerned, her father died intestate. After the testator's death his will was duly proved, and Lee Oglesbie and Jesse H. Foreman alone qualified and acted as executors under it. A large amount of property came into the hands of these executors, and they continued in the administration of the estate until 1863, when they died. Neither of them rendered an account of their administration of the estate. After their respective deaths, on November 19, 1863, the appellant, William B. Mills, was appointed administrator, with the will annexed, of the testator, and received into his hands such portion of the estate as he could recover, and continued in the administration thereof until 1869, when, under a judgment of the Supreme Court, purporting to determine the rights of all of the parties interested in the estate, he settled with and paid off each of the heirs and legatees of the testator, and was discharged from its further administration. In July, 1854, one Levi Colvin was appointed by the surrogate as the general guardian of the infant children of D. N.

Follett, including Frances R. Follett, the petitioner, and continued to act as such guardian until July, 1869, when the petitioner, having arrived at the age of fourteen years, selected and the surrogate appointed one Harvey C. Beach as her guardian. Beach continued to act as such guardian until October, 1874, when the petitioner arrived at majority. The affairs of the estate having become greatly complicated, owing to the infancy of many of the persons interested therein, the birth of issue subsequent to the execution of the will, the decease of the executors before they had rendered an account, the necessity for the support of the infants during minority by their mother, Mary Ann Follett, and the existence of her dower rights, the action referred to was commenced in November, 1867, in the Supreme Court by James A. Follett, one of the legatees under the will, against Mary Ann Follett; the administrator, William B. Mills; Frances R. Follett, the petitioner, and Levi Colvin, her general guardian, and all other heirs at law and devisees of David N. Follett, deceased, with a view of determining their respective rights in the estate, the amount thereof still remaining subject to division and distribution, the persons who were liable therefor, and the respective amounts for which they were so liable, and for an accounting by the administrator, and the payment by him to the parties entitled thereto of the amount which should be found in his hands. Calvin R. Aldrich, an attorney of the Supreme Court, was appointed guardian *ad litem* for the petitioner in the action. Each of the other defendants also appeared, and the action resulted in a decree rendered July 12, 1869, whereby among other things it was adjudged that the appellant, William B. Mills, had certain moneys in his hands belonging to the petitioner, and requiring him to pay the same to her, and that upon the payment thereof and complying with the other provisions of such judgment he should be released and discharged from all claims and demands against him as administrator of the estate. The record shows that after the rendition of said judgment the appellant fully performed all of

the obligations therein enjoined upon him and paid over to Harvey C. Beach, the general guardian of the petitioner, the moneys thereby directed to be paid to her. Other defendants who were also adjudged to pay moneys arising out of the estate to the petitioner, paid them to her general guardian in July, 1869. The provisions of the judgment seem to have been complied with by each of the parties who were required to perform any act necessary to a complete final settlement of the estate and of the rights of the respective parties interested therein. After the petitioner had arrived at majority, in July, 1875, she commenced proceedings in the Supreme Court to vacate this judgment upon the ground that the appointment of a guardian *ad litem* for her in the action was irregular, and that the court did not thereby acquire jurisdiction to render judgment against her therein. This proceeding resulted in an order, on October 26, 1875, vacating the judgment so far as it affected the petitioner.

It is claimed by the petitioner, notwithstanding the receipt by her general guardian of the sums awarded to her by the judgment, that by reason of this order she was entitled to require the appellant to account before the surrogate as to his entire administration of the estate. Assuming that she is correct in this contention, and that such judgment has been deprived, so far as she is concerned, of any force as an adjudication of the questions involved in this controversy, she could, nevertheless, upon arriving at majority, ratify the acts of her general guardian and estop herself from controverting either the validity of the judgment of which she had received the benefits or the settlements made thereunder. The judgment operated after its rendition as a contract between all of the parties to the action, and whether the same was void or voidable, the several parties thereto still had the power to give it validity by assenting to its terms or accepting the benefits which it conferred.

A principal cannot accept the benefits of an unauthorized contract made by an agent and repudiate its obligations. Neither can a party enjoy the rights awarded to him by a

judgment and deny its force as an adjudication. (*Wood* v. *Seely*, 32 N. Y. 105; *Sherman* v. *McKeon*, 38 id. 266; *Paine* v. *Hubbard*, 6 Wis. 175; 1 Redf. Surr. Rep. 276.)

The undisputed facts in the case show that the petitioner, with full knowledge of the terms of the judgment, received from her guardian, Harvey C. Beach, after arriving at her majority, the moneys which had previously been paid to him by the appellant in satisfaction of the amount thereby awarded to her. It also appeared that in 1876 she received other moneys from her guardian, which the same judgment required other defendants to pay to her, and which they had previously paid in compliance with such requirements. And, finally, after all these settlements had been made, and nearly four years after the judgment had been vacated as to her, this proceeding was commenced by the respondent before the surrogate to compel the appellant to account.

In view of all the circumstances of this case, we think that the court below erred in holding that the appellant could again be called upon to account for his administration. It is quite certain that he could not recover back the moneys which he had paid in obedience to the judgment, for the purpose of settling the estate, to any of the parties to the action. Not only had six years elapsed after such payments were made before the judgment was vacated, but the moneys which the appellant had paid the petitioner's representative had been paid over to her before this proceeding was instituted. Neither was the judgment vacated as to any of the parties except the petitioner, and as to them it still remains in force. Moneys paid to them were certainly not recoverable by him as a consequence of the order obtained by the petitioner.

It appears, therefore, that the petitioner has now moneys in her hands which she has received from the appellant solely by force of the judgment in question, and claims to repudiate the obligations of the same judgment under which he paid those moneys.

This we think she cannot do. The receipt by her of such moneys was an unequivocal act of ratification, made with full knowledge of the circumstances, and at a time when she was capable of binding herself, and she cannot now be permitted to deny the validity of an act which she has thus ratified and confirmed.

For these reasons we think the judgment of the surrogate and of the General Term should be reversed, and judgment for a dismissal of her petition, with costs, rendered against the petitioner.

All concur.

Judgment accordingly.