IN THE MATTER OF THE ACCOUNTING OF THE ADMINISTRATORS OF
STOKES POTTER, DECEASED.

*Administratrix — when she will be charged with holding assets of the estate, in favor
of creditors thereof — when real estate conveyed to her will be treated as assets.*

One Morey, who held a contract for the purchase of certain land upon which
there was unpaid about $300, assigned the same to one Potter to secure a debt
of $300 due to the latter. In July, 1881, Potter assigned the contract to one
Vine to secure a debt of $200 due from Potter to Vine's wife. September
fourteenth or fifteenth, Vine obtained an assignment of Morey's interest in the
contract, paid the amount due upon it, and took a deed of the land in his own
name. Five days thereafter Potter died. In October, Vine conveyed the land
to Potter's wife, who was also Potter's administratrix, and took back from her
a mortgage for the amount due to his (Vine's) wife, and the amount paid by
him to get his deed from the owner.

*Held*, that the administratrix was properly held to have received the land as
security for the amount due to the Potter estate from Morey, and was properly
charged with holding assets of the estate, and directed to pay creditors of the
estate therefrom.

APPEAL from a decree of the surrogate of Schuyler county,
directing the payment of a claim of a creditor of Stokes Potter,
deceased.

*O. P. Hurd,* for Betsey M. Potter, administratrix, appellant.

*C. M. Woodward,* for Henry C. Van Duser, a creditor, respondent.

BOARDMAN, J.:

Henry C. Van Duser, who as a creditor of Stokes Potter, obtained
the decree for the payment of his debt, now appealed from, is con-
ceded to be a creditor, as stated in the decree. No objections
are taken to the proceedings by which the widow and administratrix
of Stokes Potter, deceased, was called to an account by Van Duser.
On such account, as rendered, no assets were admitted to exist for
the payment of said debt, but the existence of any assets was
denied. Van Duser then contested such account and charged the
administrators with certain assets received, but not embraced in
the account. The charge was sustained as to the widow and admin-
istratrix, and a decree made for the payment of Van Duser's debt,
eighty-six dollars and ten cents, together with thirty dollars costs.

So far as the administratrix was charged with $1,000, as assets belonging to the estate, she claims she has been wronged, and asks for a reversal of the decree.

The facts out of which such $1,000 was realized are briefly as follows: In 1880 intestate owned a contract for the purchase of lands, on which about $800 was unpaid. In that year he sold said contract and all his interest therein to one Morey, subject to the payment by Morey of the balance of purchase-money, for the sum of $1,300. Morey and intestate went to the owners of the land, to whom Morey paid $500 of the $800 purchase-price then unpaid, surrendered the Potter contract and procured a new contract in lieu thereof, to be issued to Morey for balance of purchase-price, about $300. This new contract was assigned by Morey in March, 1880, to intestate, to secure him for the $1,300 which Morey had agreed to pay him. In July, 1881, intestate was owing the wife of John C. Vine (now one of the administrators) about $200, and this contract was assigned to John C. Vine, as the surrogate finds, as collateral security for that debt. About the 14th or 15th of September, 1881, John C. Vine had obtained an assignment of Morey's interest in the contract, and on the last-named day he paid up the balance (about $347) due upon the Morey contract and took a deed of the land in his own name. Five days afterwards Stokes Potter died. In October, Vine conveyed the land to the widow of deceased, receiving therefor a mortgage for $600, which was intended to repay Vine the amount of his wife's debts of $200, and the amount paid by him, $347, to get his deed, together with interest thereon. Stokes Potter never received anything for the $1,300 owing him by Morey, nor anything for his assignment of Morey's contract to Vine, except so far as his debt to Vine's wife was paid by the $600 mortgage given after his death.

In short, Stokes Potter being the owner of Morey's contract as collateral security for the payment of $1,300 due from Morey, assigned the same to Vine as collateral security for $200, due to Vine's wife. Vine gets Morey's remaining interest in the Morey contract, pays the balance due on it and takes the deed. Afterwards Vine is repaid by Mrs. Potter's mortgage for all his advances, and deeds the property to her. It is not clear whether this deed was given before or after Stokes Potter's death; the surrogate finds it

was before, while Vine thinks the deed was acknowledged in October, after the death.

On this state of facts Mrs. Potter clearly held the title to the land as Stokes Potter originally held it as security for the $1,300 Morey debt and for Stokes Potter's benefit. The assignment to Vine had been canceled, as also the unpaid purchase-price by Mrs. Potter's mortgage to Vine. His advances having been repaid to Vine, and Morey's contract having been merged in the deed to Vine, the deed from Vine to Mrs. Potter was for the benefit of the estate of Stokes Potter. When it was sold in 1883, the assets were applicable to the payment of debts. The title to the property was taken by Mrs. Potter in payment of Morey's debt, and she held it as trustee for the estate. It was not real property belonging to Potter's estate, but a debt owing by the real property in Mrs. Potter's hands due to the estate and payable when the land was sold.

Such a claim is within the jurisdiction of the Surrogate's Court to hear and determine. (Code of Civil Pro., § 2739.) Indeed, it is the ordinary case of assets belonging to the estate coming into the hands of an administratrix for which she must account. She had paid nothing for this $1,000 thus acquired. The property by her mortgage had paid all advances. The residue represented Stokes Potter's security for Morey's debt, and that was the only plausible reason for her procuring the deed from Vine.

The case of *Richardson* v. *Root* (19 Hun, 473) is not in point. That was a transfer by the husband to his wife. Here the transfer was made without the knowledge, so far as appears, of the husband, and very likely after his death. (*Gardner* v. *Gardner*, 7 Paige, 112; reversed in 22 Wend., 526, but not affecting the principle for which it is cited.) *Boughton* v. *Flint* (74 N. Y., 476); *Shakespeare* v. *Markham* (72 id., 400); *Kyle* v. *Kyle* (67 id., 400 and bottom of page 408); *Kearney* v. *McKeon* (85 id., 136); *Baucus* v. *Stover* (89 id., 1), sustain the jurisdiction of the surrogate in this case.

We conclude the surrogate had jurisdiction to hear and determine the issue between this creditor and the administratrix, and that the order was proper under the facts found.

A further question is presented by the respondent. No exception has been taken to the decree or to the facts and law therein and thereby found, nor has any case been made or settled as is required

by Code Civil Procedure (§§ 2545, 2576, 994-7, Laws of 1881, chap. 40.) In the absence of a case made and settled, as required by above section 2576 and Laws of 1881, or of exceptions as required by the other sections cited, we think the decree cannot be reviewed unless upon the facts found by the surrogate (if at all). That is inferentially decided in *Mills* v. *Hoffman* (92 N. Y., 181); *French* v. *Powers* (80 id., 150 and 151).

The evidence called out from Vine, under appellant's exception, if illegal, was afterwards proved by Nathan C. Rider without objection or exception.

We think the decree just, and no reason is given why it should be reversed.

Decree affirmed, with costs against appellant.

LEARNED, P. J., and BOCKES, J., concurred.

Decree affirmed, with costs against appellant.