(53 Misc. Rep. 488)

### LIEBMANN v. LIEBMANN et al.

(Supreme Court, New York County. Special Term. March, 1907.)

1. WILLS—CONSTRUCTION—SUBSTITUTION OF WORDS.

Testator, being the owner of 149 shares of corporate stock, directed that as to 21 shares his son should receive the net income during the life of testator's widow, and that as to the remaining shares she should receive the income during her life; that after her decease 45 shares should go to the son absolutely, and that the remaining shares should be held in trust for 10 years from "my decease," but in no event beyond the lifetime of the son, and "during the said period" the income on 26 shares should be paid to each of his four daughters or to their issue; that the son should have the right within one year after the expiration of "said ten years" to purchase the entire amount of the stock set apart for the benefit of testator's daughters at par value; that if the son failed to exercise the option within one year after the expiration of the 10-year period the stock set apart for the daughters should "belong to and be delivered to each of them at the expiration of said period of eleven years or upon the decease of my son, absolutely, as their own property." Held, that the plain purpose of testator was to give his widow during life all the income except what was to go to the son, and for 10 years after her death to give the daughters the income on 26 shares each, and that the 104 shares might then be transferred to the son, who would, subsequently to his mother's death, own 45 shares absolutely, and that effect would be given to the design of testator by substituting the words "her decease" for "my decease," and hence the son's option to purchase could not be exercised until 10 years after his mother's death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 978–980.]

2. PERPETUITIES—SUSPENSION OF ABSOLUTE OWNERSHIP.

There being but two lives specified, the lives of the mother and son, during which the absolute ownership of the property was suspended, the statute against perpetuities was not violated.

Action by Joseph Liebmann, as sole surviving executor and trustee under the will of Joseph Liebmann, deceased, against Henry Leopold Liebmann and others, for the construction of a will and codicil. Will and codicil construed.

Eugene G. Kremer, for plaintiff.
Samuel Hoff, for defendants Furst.
Mandelbaum Bros., for guardian ad litem.
Guggenheimer, Untermyer & Marshall, for defendant Liebmann.

O'GORMAN, J.    Action for the construction of the will and codicil
of Joseph Liebmann, deceased.  The testator died on April 5, 1895,
about two weeks after the execution of the will and codicil.  He was 56
years of age at the time of his death.  He was survived by his widow,
then in her sixty-second year, his son, Henry, 23 years old, and four
daughters, all of whom, excepting an incompetent, were married.  The
widow died on October 22, 1904, about 10 years after her husband's
decease.    At the time of the execution of the will the corporation of
Obermeyer & Liebmann, brewers, had outstanding 300 shares of stock
of the par value of $1,000 each.  Of these 149 shares belonged to
the testator, 149 shares were held by the Obermeyer family, and two
shares, representing the balance of power, were held in trust.  As to
21 of the 149 shares owned by the testator, the will provided that his
son should have the income thereof during the life of his mother;
that as to the remainder of the shares (128) the mother should receive
the income during her life; that upon her death the son was to receive
absolutely the 21 shares above referred to and 24 additional shares,
so that he should then be possessed of 45 shares, being approximately
30 per cent. of the entire interest of the testator in the corporation of
Obermeyer & Liebmann, which constituted the bulk of testator's estate.
As to the remaining 104 shares the will confers an option upon the son
to purchase the same at par at the expiration of 10 years.  Whether
this period runs from the death of testator or from the death of his
wife is the principal question to be determined in this action.  The
stock is valuable, and earns an income from 20 to 30 per cent. annu-
ally.  The question arises under paragraph 8 of the will, which reads
as follows:

"Eighth. I give and bequeath unto my said executors and trustees or to such
of them as shall qualify, the survivors and last survivor of them, all of the
shares of stock which shall be owned by me in my individual right at the
time of my decease in the corporation of 'Obermeyer & Liebmann.'  In trust,
however, to collect and receive the income and dividends therefrom, and to
pay over the same as to twenty-one shares of said stock to my son, Henry
Leopold Liebmann, during the lifetime of my wife, Fanny Liebmann, and to
pay over the dividend and income from the remaining of said shares of stock
to my wife, Fanny Liebmann, during the term of her natural life, and after
her decease to deliver said twenty-one shares of stock to my said son, Henry
Leopold Liebmann, to have and to hold the same absolutely and without re-
striction, and as to the remaining of said shares of stock to continue to hold the
same for the period of ten years from the time of my decease, but in no event
beyond the lifetime of my said son, Henry Leopold Liebmann, and during the
said period to pay over the dividends and income on twenty-six shares of said
stock to each of my daughters Betty Furst, Clara Rosenfeld, Sarah Cohn
and Lilly Gutman.  If any of them shall die before the expiration of the said
period of ten years, and prior to the decease of my said son, Henry Leopold
Liebmann, and before receiving the shares hereinbefore set apart for her
benefit, the shares of the one so dying shall go to her issue in equal shares; and
if there shall be no issue, to the survivors or survivor of all my children, in
equal shares, excepting my daughter Martha.  This bequest of said shares of
stock for the benefit of my daughters is made expressly subject to and upon
the condition that my said son, Henry Leopold Liebmann, shall have the right
at or after the expiration of the said ten years, during which term the said
stock shall be held in trust, but in no event beyond the lifetime of my said
son, to purchase the entire amount of stock so set apart for the benefit of my
daughters at the par value thereof.  But in the event that he shall fail to

exercise the said right within one year after the expiration of said ten years the said shares of stock so set apart for my said daughters shall belong to and be delivered to each of them at the expiration of said period of eleven years or upon the decease of my said son, absolutely and as their own property, without any restriction whatsoever. And in the event that any of said daughters, excepting my daughter Martha, shall die before the decease of my said son, and before the expiration of the said eleven-year period, and prior to the exercise of the right to purchase herein given to my said son, leaving lawful issue her surviving, the dividends and income from the shares of stock so held for the benefit of the daughter so dying shall be paid and applied by my said executors and trustees to the support, maintenance and education of the child or children of such deceased daughter or daughters. The bequest of the said shares of stock of the said corporation made to my said executors and trustees is upon the further trust that they shall, after the death of my wife. in addition to the twenty-one shares of stock hereinabove given to my said son, Henry Leopold Liebmann, deliver to and I hereby give and bequeath unto my said son, Henry Leopold, or to his issue in equal shares, in the event of his death before receiving the same, twenty-four shares of said stock, so that my said son, Henry Leopold, shall have and receive in all forty-five shares of the said stock as his own property absolutely. And if he shall die leaving no lawful issue that the said forty-five shares of stock shall be equally divided between all of my surviving children excepting my daughter Martha. In the event that I shall, prior to my decease, transfer to my said son, Henry Leopold, any of my shares of stock of said corporation, the number of shares so transferred by me to him shall be deducted from the said forty-five shares of stock which it is my intention he shall receive. If I should become the owner of any shares of stock of said corporation in addition to those hereinabove bequeathed I give and bequeath such additional shares to the same persons and in the same proportions as is above provided as to the disposition of the shares of stock owned by me at the time of the making of this my will. I direct that for the purpose of ascertaining the income or dividends upon the whole or any part of the said shares of stock all moneys drawn as salary by any one or more persons representing my holdings of said stock in said corporation or as interest upon my shares of said one hundred and fifty thousand dollars mortgage, shall be regarded as profits and shall be paid over as income or dividends upon said stock, under the terms of this my will."

It is apparent that if the expression "my decease" is held to correctly express the intention of the testator, it is difficult if not impossible to reconcile many of the testamentary provisions. It will be observed that the testator first directs that as to 21 shares the son shall receive the income thereof during the life of his widow, and that as to the remaining 128 shares the widow shall receive the income thereof during her life; that after her decease the 21 shares and 24 additional shares shall pass to the son absolutely, and as to the remaining shares the trustees shall continue to hold the same in trust for 10 years from "my decease," but in no event beyond the lifetime of the son, and "during the said period" the income on 26 shares each shall be paid to each of his daughters, or in the event of their death to their lawful issue. This clearly imposes an impossibility upon the trustees, as it requires them to pay the same income to the widow for life, and to the daughters "during the said period" of 10 years from the testator's death. The testator further provides that the son shall have the right at or within one year after the expiration of the "said ten years" to purchase the entire amount of stock so set apart for the benefit of his daughters at the par value thereof. The widow lived 9½ years after the testator. If she had survived the 10-year period and the

son had exercised his option, then the estate of the widow would be cut .off and that of the daughters destroyed. There is a further provision that if the son fail to exercise the option within 1 year after the expiration of the 10-year period the stock set apart for his daughters "shall belong to and be delivered to each of them at the expiration of eleven years or upon the decease of my son, absolutely and as their own property, without any restriction whatever." Under this provision, if the son died during the period of 10 years from the testator's death, or, if alive, failed to exercise his option before the expiration of 11 years, the stock would go to the daughters absolutely, with the right of immediate possession, although the testator previously directed that the trustees should hold the same in trust to receive the income, and, except as to the .21 shares, to pay the same to his wife during her life. All of these provisions and others to which reference might be made are inconsistent and conflicting only on the assumption that the testator meant "my decease" and not "her decease" in the paragraph of the will above quoted. By substituting "her" for "my," so that the instrument will read "for the period of ten years from the time of her decease," all the ambiguities are eliminated, and effect is given to what, from the entire instrument, appears to be the design of the testator. His purpose, plainly evinced, was to give to his widow during her life all the income except the income on 21 shares, which was to go to the son; that for a period of 10 years after her death the daughters ·or their issue were to receive the income on 26 shares each, and that at the end of this 10-year period the 104 shares were to be transferred at par to the son, who, in the meanwhile and subsequent to his mother's death, would absolutely own 45 shares in his own right. To hold otherwise would be to practically disinherit the daughters, and there is no reason to believe that the testator intended to do so. If the strict construction urged on behalf of the son were adopted, it would result in almost wholly depriving the daughters of the testator or their issue of any share in the large earning capacity of the business in which the testator had a half interest. For 9½ years the mother and son received the entire income. For a few months thereafter the daughters or their issue shared in the profits, whereupon the son attempted to terminate their enjoyment of the income by asserting his claim to the 104 shares at par. Where, upon examination of a will taken as a whole, the intention of the testator appears clear, but its plan and definite purposes are endangered by inapt or incorrect modes of expression, the court may, and it is its duty to, subordinate the language to the intention. It may reject words or limitations, supply or transpose them to get at the correct meaning. Phillips v. Davies, 92 N. Y. 199; Horton v. Cantwell, 108 N. Y. 255, 15 N. E. 546; Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933. It is evident from the context of the will that the wrong word has been used, and that the real intention of the testator will be defeated unless "her" be substituted for "my." To prevent such a result and to effectuate the testamentary design, the provision under consideration should read: "To hold the same for the period of ten years from the time of her decease." I conclude, therefore, that the limitation set forth in the eighth paragraph of the will is based on the death of the widow and not on the death

of the testator. It follows that the son's option cannot be exercised until 10 years after his mother's death. Notwithstanding the employment of inapt language in reference to the $150,000 bond and mortgage in which the testator had a half interest, there is no room to doubt his intention as gathered from the entire will and codicil. Previous to the incorporation of Obermeyer & Liebmann the parties conducted the same business as copartners, and this bond and mortgage was given to them in part payment for the transfer of copartnership property to the corporation, which they organized and all the stock of which they held. It is clear that the testator regarded his interest in the bond and mortgage as a mere incident of his stock; that they were inseparable, and that his disposition of the shares of stock was intended to embrace their pro rata interest in his half of the bond and mortgage. The statute against perpetuities has not been offended. There are but two lives specified—the mother and the son—during which the absolute ownership of the property is suspended, and where the trust term is well limited the income may be given to any number of beneficiaries or cestuis que trustent, whether persons in esse or not in esse. The lives may be any lives, whether those of beneficiaries or not. Crooke v. County of Kings, 97 N. Y. 421; Bailey v. Bailey, 97 Id. 460.

Judgment accordingly.