(58 Misc. Rep. 24.)

DE KOHLY v. MURRELL et al.

(Supreme Court, Trial Term, New York County.   February, 1908.)

1. ESTOPPEL—GROUNDS OF—CLAIM OR POSITION IN JUDICIAL PROCEEDINGS.

After the commencement of an action in this state for the balance due on an obligation acknowledging an indebtedness by defendants to plaintiff, one of the defendants commenced an action in Cuba, where all the parties resided and the obligation was executed, naming plaintiff and his codefendant as defendants, to declare the obligation without consideration nonexistent, and nonenforceable, in which action he recovered judgment. His codefendant thereupon set up such judgment in the action in this state as a bar. Plaintiff in the action in this state appealed from the judgment in Cuba to the intermediate court of appeal, and the judgment was there reversed, whereupon plaintiff interposed a reply in the action in this state, alleging that the judgment declaring the obligation invalid had been reversed. Thereafter on appeal to the Supreme Court of Cuba the judgment of the intermediate court of appeal was reversed, and the judgment of the court of the first instance affirmed, which judgment of the Supreme Court was then set up as a bar to the action in this state. Held, that plaintiff, by pleading the judgment of the intermediate court of appeal in her favor as determining the matters in controversy and as res judicata on the parties, was estopped to deny that the legal effect of the final judgment in the Supreme Court of Cuba was to determine the matters in controversy, and was res judicata on the parties.

2. JUDGMENT—CONCLUSIVENESS—PERSONS ENTITLED TO AVAIL THEMSELVES OF JUDGMENT.

Where, after the commencement of an action in this state for the balance due on an obligation acknowledging an indebtedness by defendants to plaintiff, one of the defendants commenced an action in Cuba, where all the parties resided and the obligation was executed, naming plaintiff and his codefendants as defendants, to declare the obligation without consideration, nonexistent, and nonenforceable, in which action he recovered judgment, defendant in this state was entitled to the benefit of the judgment in Cuba, notwithstanding he was a party defendant in the action in Cuba while his codefendant was plaintiff in that action.

3. SAME—MATTERS CONCLUDED.

Where, in an action to declare an obligation acknowledging an indebtedness without consideration, nonexistent, and nonenforceable, the Supreme Court of Appeal of Cuba considered in the judgment that the "existence of the loan" (which purported to be the consideration of the contract) was "materially impossible," and "that it (the contract) was simulated in all its parts, which circumstance deprives it absolutely of legal quality, since what is simulated or false can never create obligations and rights of a civil nature between its authors, wherefore the contract which they proposed to simulate is without life, validity, or force," the judgment declared that in law the "contract" never existed, and was not limited to a consideration and decision alone of the question of the existence of the consideration expressed.

Action on an acknowledgment of indebtedness by Carolina Fernandez de Kohly against Andres Fernandez Y Murrell and Josè Miguel Fernandez Y Murrell. Verdict directed for defendant Josè Miguel Fernandez Y Murrell, who alone was served with process.

Daly, Hoyt & Mason (William N. Cohen, of counsel), for plaintiff.
E. H. Smith (Austin G. Fox, of counsel), for defendants.

GOFF, J.  On July 13, 1894, at the city of Havana, Island of Cuba, Josè Miguel Fernandez and Andres Fernandez, brothers, executed and delivered to Carolina Fernandez de Kohly, their sister,

a "contract" in writing, which acknowledged an indebtedness by Josè and Andres to Carolina of $69,000, and as security for payment mortgaged certain plantations. It was provided that the money should be paid by installments at stated times, and, on failure of any such payment, Carolina might elect to demand payment of the whole sum, and, on failure to pay, foreclose all the mortgages given as security. The town of Colon was designated as the place in which were to be made all notifications, citations, and other proceedings in and out of court which would spring out of the "contract." In August, 1895, because of the failure to pay installments Carolina commenced an "executory action" in the court of first instance in the city of Colon for the recovery of the portion of the indebtedness due by Josè and Andres under the "contract," and for execution against a certain plantation and against their remaining property. In this action judgment was awarded Carolina and execution issued under which were sold the remaining plantations. The proceeds of the different sales in the aggregate were applied to the payment of the original indebtedness, leaving a deficiency of many thousands of dollars. An appeal was taken from this judgment, and it was affirmed in the intermediate court of appeal, and on further appeal it was affirmed by the Supreme Court. In October, 1902, Carolina commenced an action in this court, as plaintiff, against Josè and Andres, as defendants, on the "contract" of July 13, 1894, for the recovery of the amount of indebtedness acknowledged therein, less the sums that had been received by the plaintiff from the proceeds of the sales of the plantations. The defendant Josè appeared and answered. The defendant Andres was not served with summons and is not before the court. Subsequently, and in May, 1903, Andres commenced a "declaratory action" in the court of first instance in the city of Colon, Cuba, naming as defendants Carolina and Josè, "to declare that a certain credit secured by mortgage cannot be claimed," and to annul and declare void the aforementioned executions and sales of the plantations. This "declaratory action" was instituted and maintained after conferences between Andres and Josè, who appeared, but did not defend. Carolina appeared and defended. Judgment was rendered, declaring "that payment cannot be enforced of the credit of sixty-nine thousand dollars, in which amount Andres and Josè Miguel Fernandez declared they were indebted towards Carolina Fernandez de Kohly, as appears from deed 426, executed on the 13th day of July, 1894, * * * which was the basis of the executory suit prosecuted by that lady in this court against her brothers, Andres and Josè Miguel Fernandez, likewise declaring void the public sales effected in said suit." Then the defendant Josè made a supplemental answer that the said judgment of the court of first instance was a bar to the maintenance of the action herein, and was res adjudicata between the parties thereto. Thereupon Carolina appealed from the judgment of the court of first instance to the intermediate court of appeal sitting at Matanzas, and that court reversed the judgment. Carolina then interposed reply in this action that the judgment of the court of first instance had been reversed on the merits, that such judgment was reversed by a competent court after the commencement of the action herein; that it "de-

termines the matter in controversy"; and "that the matters at issue therein have become and are res adjudicata as between the parties to this action." From the judgment of reversal Andres appealed to the Supreme Court, the final court of appeal of the Republic of Cuba, and that court reversed the judgment of the intermediate court of appeal, and affirmed the judgment of the court of first instance. José then made a second supplemental answer by pleading that the judgment set up in the reply as a bar to the action herein had been reversed, and the judgment of the court of first instance confirmed by the judgment of a court of competent jurisdiction, the court of final appeal, was a bar to and was res adjudicata upon the matters set forth in the complaint as between the parties to this action. No reply was made to this plea, and the parties entered upon trial.

Because of the prolonged and intricate litigation in the courts of Cuba between the parties to this action relative to the estate of their father, the pleadings and documentary evidence are very voluminous and complex. To give even a condensed narrative or brief reference to all the questions arising would require a statement of inordinate length, and but an outline of the principal links in succession is here sketched in order to form the basis of the question which lies at the threshold. Is the judgment of the court of first instance in the "declaratory action" as affirmed by the judgment of the final court of appeal a bar to the maintenance of this action, and are the matters therein determined res adjudicata? In considering this question it is not necessary to refer to or pass upon the many questions raised relating to the changes of government in Cuba, the effect of military decrees or of international treaties. The action is on a written instrument, and whatever obligations rest upon the defendants must be determined by the terms of that instrument. The prayer of the plaintiff Andres in the "declaratory action" was "to establish the nonenforceability of a mortgage credit and the nullity of various public sales," and one of the issues in the action was "whether the credit is true and whether its payment can be exacted." It was declared by the judgment that the "contract" was "not a real and effective contract * * * but a feigned contract"; that "its nullity or inefficacy" depended "on its real and effective nonexistence"; that the "credit" was nonenforceable; that payment of the sum claimed to be an indebtedness could not be enforced; and that the foreclosure sales had under the "contract" were null and void. Thus in words and in effect the court of first instance declares that the "contract" upon which plaintiff sues never had a legal existence. Is the plaintiff bound by that judgment? There is no dispute but that the court of first instance at Colon had jurisdiction of the subject-matter and of the parties. They were residents of Cuba. The contract was made there. It stipulated that all proceedings in court "springing out of it" should be had at Colon, and the plaintiff litigated in and submitted to the jurisdiction of that court. She appealed from its adverse decision, and, on securing a reversal, set up the judgment in her favor as determining the matters in controversy herein, and that the matters so determined "have become and are res adjudicata as between the parties to this action." Had the trial then proceeded, she would, under

her plea, have occupied substantially a similar position to that now occupied by the defendant as to invoking the doctrine of res adjudicata. But, since the rendition of that judgment, the defendant succeeded in obtaining its reversal and a confirmation of the judgment of the court of first instance in his favor, and he now invokes the same doctrine against her that she invokes against him. When in the varying phrases of a long litigation judicial fortune smiles upon the plaintiff, she pleads the legal effect against the defendant, and when later it smiles upon the defendant he pleads its final legal effect against the plaintiff.

Having availed herself of the benefit of a judgment in her favor, should she be permitted to deny the efficacy of a judgment in the same action when rendered against her? Having not only admitted, but utilized, a judgment, is she not estopped from disputing its reversal? It is true that in form there were three judgments, but they were rendered in the same action on the same subject-matter and between the same parties. They were progressive steps in the same legal procedure. and were absorbed in the final judicial expression. When a final judgment has been rendered by a court of competent jurisdiction, it is the policy of the law that on the matters decided the parties to it shall be bound. Otherwise litigation would be endless and a finality never reached, and it is also the policy of the law that a party cannot rely upon and avail himself of the validity of a judgment to defeat his adversary's claim and subsequently claim its invalidity. Cornwall v. Davis (C. C.) 38 Fed. 878, 4 L. R. A. 563, Bigelow on Estoppel (3d Ed.) p. 601, says:

"It may accordingly be laid down as a broad proposition that one who has taken a particular position in the course of litigation must, while that position remains unretracted, act consistently with it." Hughes v. Dundee, etc., Co. (C. C.) 28 Fed. 46.

As bearing upon the question of the Court of Appeals in Starbuck v. Starbuck, 173 N. Y. 506, 66 N. E. 193, 93 Am. St. Rep. 631, said:

"The principle is well established that where a party has procured a judgment or decree to be entered, submitting himself to the jurisdiction of the court, he cannot thereafter be heard to question the jurisdiction of the court which entered the judgment or decree."

And the Supreme Court of the United States in Ohio & M. R. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693, said:

"Where a party gives a reason for his conduct and decision touching anything in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

And the same court, in Davis v. Wakelee, 156 U. S. 689, 15 Sup. Ct. 558, 39 L. Ed. 578, reiterated the rule in saying:

"It may be laid down as a general proposition that, where a party assumes a certain position in legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position."

It is also stated in the case of Mills v. Hoffman, 92 N. Y. 181, that a party cannot "enjoy the rights awarded to him by a judgment and deny its force as an adjudication." Applying the principle so enunciated, though in different forms, to the question here, the conclusion is unavoidable that plaintiff, by pleading the judgment of the intermediate court of appeal in her favor as determining the matters in controversy in this action and as res adjudicata upon the parties, is estopped from disputing the legal effect of the final judgment in the same action. If it be the law—and that it is so is well established—that a party who sets up a judgment in his favor is estopped from thereafter assailing it, it follows as a necessity to harmony in principle that a party who sets up an intermediate judgment in his favor should be estopped from assailing the final judgment in the same action. To hold otherwise would be to lead to a palpable absurdity.

A point is made that the final judgment "itself shows that the courts of Cuba refuse to give effect to judgments of American courts and that therefore, under Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95, the judgments of that republic are not enforceable here." A careful examination of that judgment fails to disclose any mention of or reference to judgments of American courts, and there could not be, for at the time of its rendition and up to present writing there has not been a judgment of an American court in this action. For this reason, and because of the conclusion already reached, the doctrine of the case cited does not apply. Further point is made that the defendant Josè cannot avail himself of the final judgment for the reason that he was a party defendant while the brother Andres was plaintiff in that action. In other words, that while the same parties were before the court they did not occupy the same relative positions that they occupy in the case at bar. There Andres was plaintiff, and Josè was joined as defendant with Carolina, while here Carolina is plaintiff and Josè and Andres are defendants. The "contract" purported to create a joint liability of Josè and Andres. The action was brought to determine whether the "contract" was enforceable. It was held to be nonenforceable. That being so, both of the brothers were relieved from all obligations concerning it. All the parties interested were before the court, either in the capacity of plaintiff or defendant. Nothing remained of the apparent joint obligation. If Carolina could not hold Andres, she certainly could not hold Josè. The foundation of her claim had been swept away. No possible issue could arise between the codefendants except the one which was decided on the general issue, but Carolina herself removes all doubt on this question by pleading the intermediate judgment in that action against Josè in this action. Stress is laid on the contention that "the only matter considered and decided in the Andres Fernandez suit was the question of the existence of the consideration expressed in the mortgage instrument." This is a refinement without substance. It is declared by article 1261 of the Civil Code "that it is an essential requisite for the existence of a contract that the object of the same shall be true," and the Supreme Court of Appeal in applying this principle considered in the judgment that the "existence of the loan" (which purported to

be the consideration of the contract) was "materially impossible," and further considered "that it [the contract] was simulated in all its parts, which circumstance deprives it absolutely of legal quality, since what is simulated or false can never create obligations and rights of a civil nature between its authors, wherefore the contract which they proposed to simulate is without life, validity or force." The judgment declared that in law the "contract" never existed. It did not declare it null and void, for the reason that a thing that legally did not exist could not be nullified. The sales under it in the "executory action" were declared null and void, because they were facts accomplished, but the thing simulated never had an existence. The question whether this simulated thing expressed the true consideration was neither considered nor determined. It was declared to be "materially impossible." How, then, can the question of what was the true consideration be open to discussion? In view of this "contract" having been made within the jurisdiction of the forum to which the parties appealed for relief and judgment having been given that it is nonexistent and nonenforceable, the situation must be regarded as if no "contract" had ever been made, and consequently a failure of proof to support the allegations of the complaint.

In pursuance of stipulation as to procedure, verdict for defendant is directed. Ordered accordingly.