In the Matter of the Judicial Settlement of the Account of Proceedings of SHELTON E. MARTIN and MARGUERITE J. DE SABLA, as Executors of the Last Will and Testament of VICTOR RICHMOND MILDEBERGER, Deceased.

Surrogate's Court, Greene County, March, 1924.

Executors and administrators — accounting — one of executors delivered bonds belonging to her to decedent in exchange for stock held in trust for him by her as trustee — later re-exchange was agreed on but though stock was redelivered to decedent bonds were retained by him — said bonds do not belong to estate — bequests of interest in trust created by father's will, of which said stock was part, passed stock to legatee — said stock chargeable with its share of commissions and expenses — rule stated for determining proper allowance for attorney — allowance of $2,050.42 made to attorney for executors.

Certain bonds which were the personal property of one of the executors did not become a part of the estate by a transaction between said executor and the decedent whereby it appears that the executor as trustee of a trust created

Surrogate's Court, Greene County, March, 1924.    [Vol. 122

by the decedent's father held certain shares of corporate stock; that said executor and the decedent agreed to an exchange of the corporate stock so held in trust for the bonds owned by the executor; that the exchange was effected but later when the decedent found that he could not negotiate the bonds it was agreed that there should be a re-exchange of the stock for the bonds and that while the executor delivered the stock to the decedent he did not return the bonds to her but left them in his safe deposit box where they were found at the time of his death, minus the coupons but indorsed for transfer.

A bequest of all the right, title and interest of the decedent in and to the trust created by his father passed the title to said stock to the legatee since a construction of the will clearly indicates that it was the intention of the decedent to give all property coming to him through his father to the legatee in question and all property coming to him through his mother's father to certain uncles.

Said stock is chargeable with its proportionate share of the commissions and expenses of the administration of the estate.

In determining the amount of the allowance to be made to attorneys for an executor the court may take into consideration the advantages resulting to the client because of such services; the amount of time spent in doing the work for which compensation is asked; the amount involved in the litigation; and the novelty and intricacy of the question of law involved, as well as the experience of the attorney, his standing at the bar and the degree of recognition accorded his ability.

In this case an allowance of $2,050.42 to the attorney for the petitioner is proper, since it appears that as a result of his activities the estate has benefited by approximately $40,000 and he has spent in work for the estate about 240 days.

JUDICIAL settlement of the account of proceedings of Shelton E. Martin and Marguerite J. de Sabla, as executors of the last will and testament of Victor Richmond Mildeberger, deceased.

Objections were filed to the account and the court is asked to determine the ownership of ten $1,000 par value first mortgage six per cent bonds of the Guatemala Central Railroad Company, found in the safe deposit box of decedent at the Farmers' Loan and Trust Company, in the city of New York, at the time of his death, which bonds were at that time found to be indorsed in blank for transfer and are identified as the same bonds coming into the possession of Marguerite J. de Sabla late in 1894 and during 1895, and now claimed by her as her property.

The court is also asked to determine the ownership of 115 shares of capital stock of the Central and South American Telegraph Company, now All America Cables, Inc., together with the interest and accumulation thereon, and whether such stock and the increase and accumulation thereon should bear its proportionate share of the commissions and expenses of administration, if by the interpretation of the will the court shall find said stock to be the property of Marguerite J. de Sabla.

Objection having been made to the payment of $2,050.42 to Henry F. Miller as attorney's fees and disbursements, as set forth in Schedule " C " of said account, the court is asked to determine

whether such sum should be allowed, or whether there should be credited upon said attorney's fees and disbursements the sum of $1,350, received from the Enoch R. Ware estate, and only the balance allowed on this accounting.

An objection was filed to the payment of $500 to Edward W. Lackey as attorney, which objection during the progress of the hearings was withdrawn.

It appears from the testimony that at the time of his death Victor Richmond Mildeberger was indebted to the Farmers' Loan and Trust Company, a bank in the city of New York, in the sum of $32,400, to secure the payment of which loan certain stocks had been by him pledged as collateral security. This debt to the bank was paid after his death, the stocks pledged as collateral security for the loan having been sold, and objection is made to the allowance to the executors of their commissions on the stocks described in Schedule " A-1 " and sold to satisfy said loan of $32,400 of the Farmers' Loan and Trust Company. The record discloses that this objection was later withdrawn.

The court is also asked to give a judicial interpretation of the 2d, 5th, 6th and 9th clauses of the will of Victor Richmond Mildeberger, deceased.

This proceeding was brought during the tenure of office of Hon. Josiah C. Tallmadge, and prior to January 1, 1924, upon which date his term of office expired as county judge and surrogate in and for the county of Greene. No decision having been rendered and the matter being thus incomplete, judicial determination is made herein as of unfinished business under section 20 of the Surrogate's Court Act.

*Henry F. Miller* and *Edward W. Lackey* (*Joseph C. Burrows*, of counsel), for petitioners.

*Osborn, Bloodgood, Wilbur & Fray*, for Marguerite J. de Sabla, individually.

*Levi S. Tenney* (*J. Sheldon Frost*, of counsel), for William R. Ware, Edward Richmond Ware, William Barlow Ware, Catherine Ware and others. ·

THORPE, S.   It appears from the testimony that in the latter part of 1894 the husband of Marguerite J. de Sabla had made her a present of certain bonds, nine of them in fact, of the par value of $1,000 each, of the Guatemala Central Railroad Company; that sometime later, in 1895, the brokers for the husband of Marguerite J. de Sabla sent her another bond of said company, of $1,000, thus making the total gift of the husband to Marguerite J. de Sabla ten $1,000 bonds of the Guatemala Central Railroad

Company. These bonds, as heretofore stated, were found in the safe deposit box of the decedent at the time of his death, minus the coupons, but indorsed for transfer and were the identical bonds coming into the possession of Marguerite J. de Sabla in 1894 and 1895.

It further appears that the father of the decedent herein, C. Victor Mildeberger, had died sometime before, leaving a last will and testament, by the terms of which Marguerite J. de Sabla, his sister, was appointed the sole executrix and sole trustee of a trust created under said will for the benefit of Victor Richmond Mildeberger. It also appears that as a part of the funds connected with said trust of the estate of C. Victor Mildeberger were certain shares of stock in the Central and South American Telegraph Company, now All America Cables, Inc., to which there was a certain amount of sentiment attached by Marguerite J. de Sabla because of the fact that her husband, now deceased, had been one of the promoters of that company. It further appears that Marguerite J. de Sabla had suggested to the decedent herein that in lieu of the Central and South American Telegraph Company stock, now All America Cables, Inc., coming to him from his father's estate, which stock she held in her representative capacity as sole trustee, she would turn over to him the ten $1,000 Guatemala Central Railroad Company bonds and keep the Central and South American Telegraph Company stock, now All America Cables, Inc., as her own. The decedent consented and took the Guatemala Central Railroad bonds and deposited them in his safe deposit box in the Farmers' Loan and Trust Company, in New York city, where they were found, as is before stated, indorsed for transfer at the time of his death. The testimony shows that the decedent herein endeavored to negotiate a loan at said bank and to pledge the ten Guatemala Central Railroad bonds as collateral security for said loan, and that the bank declined to accept said bonds as collateral security, stating that there was not a ready market for them, whereupon the decedent herein wrote to Marguerite J. de Sabla, stating that fact and requesting that she turn over to him the stock of the Central and South American Telegraph Company, now All America Cables, Inc., as that would be accepted by the bank for a loan, stating to her, in substance, that he would deliver to her the ten Guatemala Central Railroad bonds, having previously given her in detail the manner in which she might secure access to his safe deposit box, even telling her the password, " Ware," by the use of which she might gain admission thereto.

This testimony is undisputed and upon substantially this statement of facts I am asked to determine whether or not the Guatemala Cen-

tral Railroad bonds were and are the property of Marguerite J. de Sabla and not a part of the estate of Victor Richmond Mildeberger.

It is clearly apparent to me from the evidence that upon the delivery by Marguerite J. de Sabla to the decedent herein of the stock of the Central and South American Telegraph Company, now All America Cables, Inc., the ten Guatemala Central Railroad bonds became, were and are the property of Marguerite J. de Sabla, and I so find, and direct the executors of the estate of Victor Richmond Mildeberger, deceased, to deliver to said Marguerite J. de Sabla said bonds together with all interest or increase thereon.

The court is asked to put a judicial interpretation upon the 2d, 5th, 6th and 9th clauses of the will of Victor Richmond Mildeberger, deceased, and also to determine to whom belong the 115 shares of stock of the Central and South American Telegraph Company, now All America Cables, Inc., together with all increase income thereon, as bequeathed in said will.

The 2d, 5th, 6th and 9th clauses of said will provide as follows:

" *Second.* I give, devise and bequeath to my Aunt, Marguerite J. de Sabla, all my right, title and interest in and to the trust created for my benefit by the will of my Father, Victor C. Mildeberger in the event of my death occurring before the property so held in trust is actually turned over to me. Should my Aunt, Marguerite J. de Sabla die before me, I give, devise and bequeath all my right, title and interest in and to said trust to her son Theodore de Joly de Sabla, Jr. Should Marguerite J. de Sabla and Theodore de Joly de Sabla, Jr., both die before me then said property is to go to the descendants, if any, of said Theodore de Joly de Sabla, Jr., and there being no such descendants then to be distributed according to the laws of intestacy."

" *Fifth.* I give, devise and bequeath to my Uncles, William R. Ware and Edward J. Ware, their heirs, executors, administrators and assigns, share and share alike, all my right, title and interest in the Estate of my Grandfather Enoch R. Ware, deceased. In the event of the death of either or both of said Uncles occurring before mine their descendants are to take *per stirpes* and not *per capita.*

" *Sixth.* I give and bequeath all my cash and securities to my Uncles William R. Ware and Edward J. Ware, their heirs, executors, administrators and assigns. Their descendants to take *per stirpes* and not *per capita.*"

" *Ninth.* It is my purpose and intention by this will to so dispose of my estate that the portion which has or will come to me through my Father's side of the family will, so far as possible, return to that side and the portion which has or will come to me

from my Mother's side of the family will, in like manner, return so far as possible from whence it came."

In construing a will the question is, what was the intention of the testator? That is to be ascertained from the language which he used. As was said by Judge O'Brien in *Johnson* v. *Brasington*, 156 N. Y. 181, 185: " When we speak in such cases of the intention of the testator we do not always refer to some intention or purpose that he actually had in mind. We mean that when he has expressed himself in ambiguous or doubtful language that the law will impute to his words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice." *Riker* v. *Gwynne*, 201 N. Y. 143; *Nolan* v. *Nolan*, 169 App. Div. 372.

" The duty of the court is not to make a new will or codicil to carry out some supposed but undisclosed purpose, but to ascertain what the testator actually intended by the language employed by him when properly interpreted, and then to determine whether such intended provisions are valid or otherwise. The duty of the court is to interpret, not to construct; to construe the will and codicil, not to make new ones." *Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 92.

" The intent of the testatrix will not be defeated by the injudicious use of punctuation or by the substitution for some perfectly apt word of one less so, providing her meaning can reasonably be found." *Mee* v. *Gordon*, 187 N. Y. 400, 405, revg. 104 App. Div. 520.

In ascertaining such intention we are required to take into consideration the surrounding circumstances under which he framed the provisions of the will, the situation of his estate and of the members of his family whom he wished to be the recipients of his bounty. *Williams* v. *Jones*, 166 N. Y. 522.

" Rules for the construction of wills are for the sole purpose of ascertaining the intention of the testator, and if the intention is clear and manifest it must control, regardless of all rules that have been formed for the purpose of determining their construction." *Cammann* v. *Bailey*, 210 N. Y. 19, 30; *Roosa* v. *Harrington*, 171 id. 341; *Robinson* v. *Martin*, 200 id. 159.

" When the intention of a testator is reasonably clear, and it is not in violation of any statute, it must be enforced. (*Cammann* v. *Bailey*, 210 N. Y. 19.) It was said by Judge Pound, now of this court, in *Baker* v. *Gerow* (126 N. Y. Supp. 277): ' In construing a will it has been repeatedly held that the object of the courts is to ascertain, not the intention simply, but the expressed intention, of the testator, *i. e.*, the intention which the will itself, either expressly or by implication, declares. In other words, it is the

duty of the court to ascertain the intention of the testator from the words he has used, and to ascertain and give effect to the legal consequences of that intention when ascertained.' " *Matter of Silsby*, 229 N. Y. 396, 401.

" The supreme test of construction is the intention of the testatrix." *Rezzemini* v. *Brooks*, 118 Misc. Rep. 791, 793, citing *Central Trust Co.* v. *Egleston*, 185 N. Y. 23, 29.

The court in construing a will should seek the intent of the testator as exhibited by the words he has selected. Canons of construction may aid. *Matter of Bump*, 234 N. Y. 60; *Matter of Hoffman*, 140 App. Div. 121.

Where on consideration of the general plan of the will and the circumstances under which it was made, it appears that it is not a case where the intention is really unexpressed, but rather one where the words of gift are inaptly or unfortunately used, or arranged by the testator, the court may subordinate the language to the meaning and intention of the testator. *Matter of Miner*, 146 N. Y. 121, 130.

Where upon examination of a will, taken as a whole, the intention of the testator appears clear, but its plain and definite purposes are endangered by inapt or inaccurate modes of expression, the court should subordinate the language to the intention; and to get at the correct meaning it may reject words and limitations, supply or transpose them. *Phillips* v. *Davies*, 92 N. Y. 199; *Liebmann* v. *Liebmann*, 53 Misc. Rep. 488.

The evidence disclosed that at the death of Victor Richmond Mildeberger, Marguerite J. de Sabla mentioned in the 2d clause of said will was still living and is a party to this proceeding.

To me it is clearly apparent that the 2d, 5th and 6th clauses of the will of the decedent herein refer respectively to three separate and distinct classifications of property. The first, included in the 2d clause, refers to that class of property coming to this decedent from the will of C. Victor Mildeberger, his father, and disposed of in the 2d clause as a class by itself. The second class of property is that designated by the 5th clause of the will as coming to the decedent herein from the estate of his grandfather Enoch R. Ware, his mother's father, and as a second class of property is so disposed of by the 5th clause of the will. The third and last class of property is that designated in the 6th clause of the will as all " my cash and securities," and is that character of property which the decedent had accumulated in his lifetime but which was neither a part of the property coming to him from his father, C. Victor Mildeberger, nor a part of the property coming to him from his mother's father, Enoch R. Ware. He disposed of these three;

*first*, from his father's side to Marguerite J. de Sabla; *second*, of that from his mother's father, Enoch R. Ware, to his uncles William R. Ware and Edward J. Ware, their heirs, executors, administrators and assigns; and the *third*, his own accumulation, to his uncles William R. Ware and Edward J. Ware, their heirs, executors, etc.

I cannot conform to the contention made by the objectors herein as to their interpretation of the will of Victor Richmond Mildeberger because of the facts as disclosed by the testimony herein.

It appears from the evidence and is not refuted, nor is there any attempt made to offer any evidence to refute the fact, that Victor Richmond Mildeberger spent a considerable part of his life at the home of Marguerite J. de Sabla in the town of Hunter, Greene county, N. Y.; that his associations with that family were so familiar and of such an intimate character as is shown by the following question put to Theodore de Joly de Sabla, and his answer thereto: " Q. Did your mother treat you and Victor R. Mildeberger in all respects alike, as far as you know?   A. She did."

By sustaining the contention of the objectors herein no substantial amount of property would go to Marguerite J. de Sabla with whom the decedent herein was on the most intimate and friendly terms of relationship, and the bulk of his estate would go to the objectors herein.   This, however, should not be the governing factor and is not.   The governing factor in this whole proceeding is to determine and spell out by combining all four of these clauses whether or not it is clearly evident what was the intention of the testator at the time he caused this will to be drawn.   A careful perusal of the will itself clearly indicates the looseness with which it was drawn and, one might almost say, carelessness, yet it is by considering all the clauses together that we are able to spell out, to my mind clearly and distinctly, what was the intent of the testator, which is the essential element to be here determined.   Whether we treat the 9th clause as explanatory, or whether we treat it as a disposing clause of the will, does not matter because the four clauses of the will must be taken together, and in any event there is an explanation given in the 9th clause which no matter how sufficient the other language may be in the preceding clauses, emphasizes and explains the disposition which Victor Richmond Mildeberger desired to be made of his property and seems to me to furnish the only reasonable interpretation which can be placed upon the construction of the intent of the testator herein.

Combining the circumstances surrounding the life of the decedent and his associations, taking the will as a whole, and putting upon it the interpretation which it seems to me is the only reasonable

interpretation which can be put upon it, I find that the 115 shares of Central and South American Telegraph stock, now All America Cables, Inc., together with all increase in the way of dividends and income therefrom, which came from his father, passes under the will to Marguerite J. de Sabla and is chargeable with its proportionate share of commissions and expenses of administration.

Objection is made to the account because of the payment by the executors of $2,050.42 to Henry F. Miller, as an attorney for the executors in proceedings in connection with the estate of Victor Richmond Mildeberger from the time of his death up to this accounting, it being contended on the part of the objectors that Henry F. Miller had already received from the estate of Enoch R. Ware as part payment of his services the sum of $1,350, leaving a balance to which no objection is made.

The testimony discloses that Henry F. Miller performed a considerable amount of legal services in connection with the estate herein; that as a result of his efforts there was brought into the estate from the estate of Enoch R. Ware the sum of upwards of $40,000. It also appears that the time consumed was over 249 separate days, most of which were entirely devoted to this matter. The testimony discloses the fact that Henry F. Miller did receive from the estate of Enoch R. Ware the sum of $1,350.

While it is true that there is a duty devolving upon a surrogate to scrutinize with a great degree of care charges of attorneys of this character and to prevent the payment of funds from an estate in such sums as would constitute exorbitant, improper or illegal fees, it is likewise the duty of a surrogate to see that justice is done, and that without working a hardship upon the estate from which the payment is to be made, also to see that an attorney secures a fair and reasonable compensation in accordance with the law for the services which he has been called upon to perform.

There does not seem to be any conflict of authorities as to the manner in which the amount paid for such services shall be determined. The court may take into consideration: (1) The advantages resulting to the client because of such services; (2) the amount of time spent in doing the work for which compensation is asked; (3) the amount involved in the litigation; (4) the novelty and intricacy of the question of law involved, as well as the experience of the attorney, his standing at the bar and the degree of recognition accorded his ability. *Matter of Stevens*, 114 App. Div. 607; *Matter of Sewell*, 32 Misc. Rep. 604.

Counsel fees must be reasonable as measured by the ability and success of the attorney and the size of the estate. *Matter of Spooner*, 86 Hun, 9; *Matter of Jones*, 28 Misc. Rep. 599.

Surrogate's Court, Greene County, March, 1924.    [Vol. 122

" The rule is well settled that in no event can an allowance be made by the surrogate for a claim presented by an executor, until he has actually paid his counsel and has applied for reimbursement." *Matter of Bailey*, 47 Hun, 477, 478.

It is apparent from the evidence that whatever action was taken by Henry F. Miller as the attorney in this proceeding was justified, as it brought to the estate of Victor Richmond Mildeberger approximately $40,000. The gain, therefore, to the estate was very material and the evidence, undisputed, discloses the character and ability of Henry F. Miller and the class of legal work in which he is engaged.

Section 279 of the Surrogate's Court Act provides: " In addition to the sums specified in the last section, the surrogate may, in his discretion, allow to an executor, administrator, guardian, or testamentary trustee, upon a judicial settlement of his account, or on an intermediate accounting required by the surrogate, such a sum as the surrogate deems reasonable for his counsel fees and other expenses not exceeding *twenty-five* dollars for each day necessarily occupied in preparing his account for settlement and in drawing, entering, and executing the decree."

Prior to the amendment of section 279 by chapter 526 of the Laws of 1923, ten dollars per day was allowed, to which reference is made here for the purpose of showing how the value of these services may be determined and within what limits the surrogate is permitted a discretion which he must exercise with a great degree of care. Taking into consideration the magnitude of the estate, the character of work involved, the benefit derived by the estate and the standing of the attorney, it is clearly evident to me that Henry F. Miller performed such services as warrant me in allowing the sum already paid in lieu of such services in full up to the accounting, in the sum of $2,050.42. I cannot find that justice would be done to follow the contention made by the objectors that he should have deducted from this amount the sum of $1,350 and paid merely the balance. It would neither be fair, equitable nor lawful, and I, therefore, allow the amount paid by the executors in the sum of $2,050.42, fees and disbursements, to Henry F. Miller, as is disclosed by Schedule " C " of the account herein.

Therefore, the objections to the account are overruled and the account is hereby allowed as presented.

It is so ordered.

Decree may be prepared accordingly, costs and allowances to be adjusted at the time of the entry of the decree.

Decreed accordingly.