In the Matter of the Judicial Settlement of the Account of Proceedings of SHELTON E. MARTIN and Another, as Executors, etc., of VICTOR RICHMOND MILDEBERGER, Deceased, Respondents.

EDWARD RICHMOND WARE and Others, Appellants.

Third Department, May 6, 1925.

Wills — construction — will devised interest in trust estate set up by testator's father to father's sister in case testator died before principal of fund was turned over to testator under provisions of trust — another clause devised all cash and securities to relatives on mother's side — all residuary estate was left to father's sister — last clause of will stated testator's intention to be that property derived from father should go back to that side of family and that property derived from mother should go back to her side of family — testator died after principal of trust, including stock certificates, was turned over to him — clause bequeathing cash and securities does not include certificates of stock in trust fund — said certificates passed to father's sister either under first clause mentioned or under residuary clause.

Under a will devising all the interest of the testator in a trust set up by his father to the testator's aunt, a sister of the father of the testator, in case the testator died before the principal fund of the trust was turned over to him under the provisions of his father's will, stock certificates which were included in the trust fund passed to the testator's aunt under the provisions of the will mentioned or under the residuary clause by which all the residuary estate was devised to the aunt, notwithstanding another clause devising all cash and securities to relatives of the testator's mother and notwithstanding the fact that the principal

of the trust fund was turned over to the testator before his death, since it appears that the testator distinctly stated in the last clause of his will that it was his intention that all property derived from his father's side of the family should go back to that side and that all property derived by him from his mother's side of the family should return to her side on his death.

The evident intention of the testator can be carried out by construing the devise of cash and securities as not relating to stock derived from the testator's father.

HINMAN and McCANN, JJ., dissent in part, with opinion.

APPEAL by Edward Richmond Ware and others from certain portions of a decree of the Surrogate's Court of the county of Greene, entered in the office of the said Surrogate's Court on the 21st day of July, 1924.

*Levi S. Tenney* [*J. Sheldon Frost* of counsel], for the appellants.

*Henry F. Miller*, for the executors, respondents.

*Osborn, Bloodgood, Wilbur & Fray* [*John L. Fray* of counsel], for the respondent Marguerite J. deSabla.

COCHRANE, P. J.:

The facts are clearly and sufficiently stated in the opinion of Mr. Justice HINMAN.

In the construction of this will it seems to me that too much importance is sought to be placed on the word " securities " in the 6th paragraph and too little importance attached to the 9th paragraph. The will must be construed in its entirety and the 9th paragraph indicates clearly the intent of the testator that the stock certificates in question which came to him from his father should " return to that side " of the family which in this instance is Mrs. deSabla. This 9th paragraph should be made just as effective as any other paragraph in the will. It should be our guide and our effort should be to carry out the testator's intent as there plainly expressed. Under the 2d and 8th, or residuary, clauses of the will there would be no difficulty in establishing Mrs. deSabla's right to the stock in question were it not for the use of the word " securities " in the 6th paragraph because even if the 2d paragraph is insufficient for that purpose she is made the residuary legatee. It is by no means certain that when the testator used the word " securities " he intended to include stock certificates. The authorities do not agree as to whether the word includes stock certificates. For instance in Schouler on Wills, Executors and Administrators (Vol. 2 [6th ed.], § 1128) it is said: "A certificate of shares is not a security," although later on it is also said: " But to this word ' security ' present usage gives a generous scope far beyond its literal meaning." Also the same authority says in the same section: " The meaning of such words is affected as usual by the con-

struction of the particular will." In *Bank of Commerce* v. *Hart* (37 Neb. 197; 20 L. R. A. 780) the charter of the bank authorized it " to purchase securities of every kind " and the court said: " But certificates of stock are not securities within the meaning of this provision, nor such as the word imports in commercial or banking phraseology." Further authorities might be cited to show that the word does not always have the comprehensive significance generally attributed to it by the lexicographers. The point here is in what sense did the testator use the word? In the 4th paragraph of his will he made a disposition of " all property of any kind or nature whatsoever, which may be left to me by the will of my Aunt, Marguerite J. deSabla." If that property consisted in whole or in part of " cash and securities " could it be successfully argued that such " cash and securities " would not pass under that paragraph but that such " cash and securities " would pass under the 6th paragraph because of the use therein of those words? Clearly the testator did not so intend. The will is structurally imperfect. Words are loosely used and phrases are carelessly employed in respect to their bearing or influence on different parts of the will. From the entire instrument it would seem that the word " securities," which occurs only once, is used in a restricted sense. One of Mr. Jarman's well-known rules of construction provides that words " are in all cases to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative." (2 Jarman Wills [6th Am. ed.], 772.) But if we give to the word its broadest meaning I yet think we may reach the same conclusion. The problem in this as in every testamentary disposition is to effectuate if possible the intention of the testator. In most cases the difficulty with the problem consists in ascertaining that intention. Here the intention is plainly declared in the 9th paragraph and the difficulty consists merely in giving it effect. It seems to me this is a case where we may well invoke Mr. Jarman's seventh rule of construction, as follows: " That all parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole, but where several parts are absolutely irreconcilable the latter must prevail." (2 Jarman Wills [6th Am. ed.], 771.) There should not be such a construction of the will as to practically ignore the last declaration of the testator therein. Rather I think it should be made the prominent feature of the will as far as consistently possible and other portions thereof should be subordinated thereto. This view of the case has the merit of accomplishing the intent of the testator and it seems to me that it involves us in no greater inconsistency or difficulties of construction than some other construction which may be adopted.

The decree so far as appealed from should be affirmed, with costs to all parties filing separate briefs herein, payable out of the estate.

All concur, except HINMAN and McCANN, JJ., who vote for modification in opinion by HINMAN, J.

HINMAN, J. (for modification):

Various objections were filed to the account of the executors but the only objections surviving for disposition upon this appeal under exceptions duly taken to the decision and decree of the surrogate relate to the proper judicial interpretation to be given to certain provisions of the will of the deceased, decisive of the ownership of certain shares of stock of the Central and South American Telegraph Company (now All America Cables, Inc.), together with all increase and income thereon bequeathed in said will.

The will, after directing the payment of debts and funeral expenses, provided as follows:

"*Second.* I give, devise and bequeath to my Aunt, Marguerite J. deSabla, all my right, title and interest in and to the trust created for my benefit by the will of my Father, Victor C. Mildeberger,. in the event of my death occurring before the property so held in trust is actually turned over to me. Should my Aunt, Marguerite J. deSabla, die before me, I give, devise and bequeath all my right, title and interest in and to said trust to her son, Theodore deJoly deSabla, Jr. Should Marguerite J. deSabla and Theodore deJoly deSabla, Jr., both die before me, then said property is to go to the descendants, if any, of said Theodore deJoly deSabla, Jr., and there being no such descendants, then to be distributed according to the laws of intestacy.

"*Third.* I give and bequeath all my furniture, jewelry and personal effects to my Aunt, Marguerite J. deSabla, and in the event of her death occurring before mine, to her son Theodore deJoly deSabla, Jr., his heirs, executors, administrators and assigns.

"*Fourth.* I give, devise and bequeath to Theodore deJoly deSabla, Jr., his heirs, executors, administrators and assigns, all property of any kind or nature whatsoever, which may be left to me by the will of my Aunt, Marguerite J. deSabla.

"*Fifth.* I give, devise and bequeath to my Uncles, William R. Ware, and Edward J. Ware, their heirs, executors, administrators and assigns, share and share alike, all my right, title and interest in the Estate of my Grandfather, Enoch R. Ware, deceased. In the event of the death of either or both of my said Uncles occurring before mine, their descendants are to take, *per stirpes*, and not *per capita.*

"*Sixth.* I give and bequeath all my cash and securities to my

Uncles, William R. Ware and Edward J. Ware, their heirs, executors, administrators and assigns. Their descendants to take *per stirpes* and not *per capita*.

"*Seventh.* I give and bequeath to my Uncles, William R. Ware and Edward J. Ware, the china and glass which came to me through my mother.

"*Eighth.* All the rest, residue and remainder of my Estate, both real and personal, I give, devise and bequeath to my Aunt, Marguerite J. deSabla, her heirs, executors, administrators and assigns forever.

"*Ninth.* It is my purpose and intention by this will, to so dispose of my estate, that the portion which has, or will come to me through my Father's side of the family will, so far as possible, return to that side, and the portion which has or will come to me from my Mother's side of the family, will in like manner, return, so far as possible, from whence it came."

The shares of stock which are the subject-matter of the controversy formed a part of the trust estate referred to in the 2d paragraph of the will which had been created for the testator's benefit by the will of his father. The will in question here was executed when the testator was twenty-three years of age. He died at the age of thirty-three. By the will of his father testator's aunt, Marguerite J. deSabla, was made trustee of the said trust estate to apply the income thereof to the maintenance and education of his son (the present testator) until he should attain the age of twenty-one years, when she was directed to pay to him any accumulated income and to pay the entire net income to him from them until he should attain twenty-five years of age, when the *corpus* of the said trust estate should be transferred and delivered to him absolutely and forever. The will of testator's father also provided that in case of the death of his son before attaining twenty-five years of age, the *corpus* of the trust should go to the said Marguerite J. deSabla, who was a sister of testator's father. She assumed the trust and carried it on for many years. Long after he became twenty-five years of age but before he died, the stock in question was turned over to him by Marguerite deSabla.

The point in controversy is whether these shares of stock should pass to testator's uncles, who were relatives on his mother's side of the family, under the 6th clause of the will, or whether they should pass to Marguerite deSabla, who was a sister of his father, under the 2d clause of the will. Under the 6th clause of the will, he bequeathed " all my cash and securities to my Uncles," the appellants herein. Under the 2d clause, he bequeathed to his aunt, Marguerite deSabla, all his right, title and interest in and to

the trust created by his father " in the event of my death occurring before the property so held in trust is actually turned over to me." Under the 8th clause, he devised and bequeathed to Marguerite deSabla " all the rest, residue and remainder of my Estate, both real and personal." Under the 9th clause, he merely expressed the purpose and intention of his will. It was explanatory in character and the will should, if possible, be so construed as to carry out the intention of the testator. His expressed intention was " to so dispose of my estate, that the portion which has, or will come to me through my Father's side of the family will, so far as possible, return to that side, and the portion which has or will come to me from my Mother's side of the family, will in like manner, return, so far as possible, from whence it came." His will as a whole seems to have completely and comprehensively carried out that intention at the time. The difficulty with the situation is that in dealing with the property which came to him from his father's side of the family, he dealt with it only in a limited manner, that is, in case he died before the property held in trust for him was " actually turned over " to him. Otherwise the 2d clause of the will was not effective. It may be that he contemplated making a new will in that event, or of otherwise taking care of his aunt. Whatever his plan may have been, certainly, when he made this· will, he carried out his ntention as he stated it to be in the 9th clause, so far as Marguerite deSabla was representative of relatives on his father's side. This construction gives reasonable interpretation to the 9th clause of the will. To extend either the 2d or the 9th clause beyond this interpretation cannot be justified. The 2d clause contained a conditional bequest. The 9th clause was merely expressive of an intention in aid of the construction of the will as a whole. The clear language of the 6th clause of the will by which the testator bequeathed all his cash and securities to his uncles cannot be overcome by the general language expressive of mere intention as set forth in the 9th clause. The sole remaining question is whether the term " securities " as used in the 6th clause should be interpreted as including certificates of stock. As generally understood and as defined by the dictionaries, the term " securities " is practically a synonym of " investments." The standard dictionaries define the term as " an evidence of debt or of property, as a bond, stock certificate, or other instrument, etc." (Webster New Internat. Dict. [1925].) While there are authorities to the contrary, holding that technically shares of stock are not " securities," that term in its broadest sense and ordinary usage does embrace certificates of stock. I do not think that by using this term in the 6th clause of his will, he meant to deal only with bonds or other evidences

of debt.  My conclusion is that the certificates of stock in controversy pass to the beneficiaries mentioned in the 6th clause of the will.

The appellants raise a question in relation to the commissions of the executors.  This objection is not available to them, however, upon this appeal.  It was not raised by exception to the decision and the decree of the surrogate, who made formal findings.  (Surrogate's Court Act, §§ 71, 72; Civ. Prac. Act, § 445.)  Moreover, the only objection raised upon this question at the trial was withdrawn and it is my understanding that no further reference thereto was made by the appellants until after the case had been decided and was ready for decree.  Even then the appellants in their filed exceptions to the decision and decree made no reference to the objection now raised in their brief.

It is my conclusion that the decree of the surrogate should be modified so as to provide that the shares of stock of the Central and South American Telegraph Company (now All America Cables, Inc.), together with the increase and income thereon, belong to the appellants under the 6th clause of testator's will, and as so modified should be affirmed.

McCANN, J., concurs.

Decree so far as appealed from affirmed, with costs to all parties filing separate briefs herein, payable out of the estate.