In the Matter of the Will of LIZZIE M. SLITER, Deceased.
ARTHUR J. SLITER et al., Appellants; EDITH M. FINEGAN,
Respondent.

Argued June 13, 1941; decided July 29, 1941.

*John J. Mackrell* and *Chester G. Wager* for Arthur J. Sliter, appellant. The holding of the Surrogate that Arthur J. Sliter is the owner in fee of the real property referred to in paragraph "fourth" of the will of testatrix expresses her intention. (*Matter of Rooker*, 248 N. Y. 361; *Matter of Chalmers*, 264 N. Y. 239; *Matter of Durant*, 250 N. Y. 45; *Matter of Buechner*, 226 N. Y. 440; *Matter of Mildeberger*, 122 Misc. Rep. 743; 212 App. Div. 727; 241 N. Y. 528; *Matter of Johnson* v. *Brasington*, 156 N. Y. 181; *Smith* v. *Bartlett*, 79 App. Div. 174; *Starr* v. *Starr*, 132 N. Y. 154.)

*Guy F. Swinnerton* for George D. Sliter, appellant. The paramount intention of the testatrix, as expressed in her will, was the care and protection of her son, George D. Sliter. (*Matter of Quinby*, 134 Misc. Rep. 296; *Brown* v. *Quintard*, 177 N. Y. 75; *Matter of Smith*, 254 N. Y. 283; *Dwight* v. *Fancher*, 245 N. Y. 71; *Benson* v. *Corbin*, 145 N. Y. 351; *Matter of Rooker*, 248 N. Y. 361; *Robinson* v. *Martin*, 200 N. Y. 159.)

*Lucien E. Clickner* for respondent. The intention of the testatrix should be sought and given effect when that can be done. (*Klock* v. *Stevens*, 20 Misc. Rep. 383; *Matter of Kenny*, 224 App. Div. 152; *Furniss* v. *Cruikshank*, 230 N. Y. 495.) The testatrix intended in paragraph "fourth" of her will that the words "as his share" should be interpreted to mean "applied toward his share" so far as the share of Arthur J. Sliter in her estate would permit. (*Ritch* v. *Hawochurst*, 114 N. Y. 512; *Tator* v. *Tator*, 4 Barb. 431.)

The will must be so construed as to harmonize and give effect to the whole thereof. (*Matter of Buechner*, 226 N. Y. 440; *Matter of Kenny*, 224 App. Div. 152; *Matter of Knapp*, 168 Misc. Rep. 128; *Klock* v. *Stevens*, 20 Misc. Rep. 383.)

FINCH, J. This appeal involves the construction of a will.

The Appellate Division reversed the decree of the Surrogate.

Decedent died leaving a last will and testament which was duly admitted to probate. The third, fourth and fifth paragraphs of the will provide as follows:

" *Third*. I give and bequeath to my son Arthur J. Sliter all my right, title and interest in and to all farming tools and implements, together with the contents of the milk house located upon the premises where I now reside.

" *Fourth*. I give, devise and bequeath to my son George D. Sliter the use and occupation of the dining room, kitchen, pantry and rooms over the same, together with the front and back entrances to said rooms in that part of the homestead where I now reside in the Town of North Greenbush, Rensselaer County, New York, together with the use of all furniture including my bedding, contained in said rooms. I also give, devise and bequeath to my said son George D. Sliter, sufficient space in the garage for his automobile, as the same is now being used and occupied by him.

" The use and occupation of the premises hereinabove given to my said son George D. Sliter is with the proviso that said premises shall be retained in the use and occupation thereof by my said son Arthur J. Sliter. Should the said Arthur J. Sliter not desire to retain said premises *as his share of the estate*, then I direct that my said executors hereinafter named may sell and dispose of said premises free and clear of all liens and incumbrances herein created by the provision herein made for my said son George D. Sliter.

" *Fifth*. All the rest, residue and remainder of my estate I give, devise and bequeath to my children Arthur J. Sliter

and Edith M. Finegan and George D. Sliter, to be divided equally among them." (Italics interpolated.)

The testatrix was the widow of one John Sliter, who had predeceased her by some six years. At the time of his death her husband was seized of a farm of about 150 acres and was the owner of personal property which consisted partly of a one-half interest in a milk business and certain cattle and tools which were owned in common by him and his son Arthur. Letters of administration on his estate were issued to his widow, the decedent herein. Shortly thereafter the three children, Arthur, George and Edith, by a bill of sale, transferred to their mother, the decedent, their interest in the one-half personal property which they acquired on the death of their father. On the same day these children executed a deed. to their mother conveying their interest in all the real estate of the father. No monetary consideration passed between the parties with reference to either of the above transactions, which were in reality gifts to their mother. About a year later decedent, her daughter Edith, and her son Arthur made a reappraisal of such personal property preparatory to the purchase thereof by her son Arthur, at which time Arthur agreed to pay one-half of such reappraisal to his mother as representing her one-half interest in this personal property which was necessary in general to work the farm. Arthur owned in his own right as noted the other half.

It appears in the record that the son George was less well equipped than the others to earn his living in a competitive field, and for that reason was particularly the concern of the maternal care of the mother. She was concerned lest George should not be taken care of after her decease.

The farmhouse was divided into two residences, one of which was occupied by the mother and her son George, and the other by Arthur and his wife and family. George had helped both his father and brother Arthur with the work on the farm. It also appears in the records and constitutes evidence upon which respondent greatly relies, that the testatrix had an equal love for her three children and desired

that they share her estate " share and share alike." At the time the will was probated, decedent had an estate estimated at approximately $18,000, which sum includes the amount of $7,500 as the value of the farm. Of the total amount of $18,000, $5,400 was owing to her by her son Arthur.

Edith M. Finegan, the daughter of the decedent, who was one of the executors of the will, petitioned the Surrogate for a construction of the " fourth " and " fifth " clauses of the will, contending that it was the intent and purpose of the testatrix to consider the farm as a portion of the assets of the decedent for the purpose of making an equal distribution for the three children; that, therefore, Arthur should be permitted to purchase said property, that his distributive share in the estate should be applied towards the purchase price if he desired to purchase, and the excess between Arthur's distributive share and the purchase price should be paid by Arthur into the estate; or that the farm should be sold under the power of sale granted to the executors under paragraph " fourth " of the will and the proceeds added to the other assets for equal distribution.

Both Arthur and George opposed this petition, urging that paragraphs " fourth " and " fifth " of the will should be read in conjunction so that in the process of dividing the property under the " fifth " clause of the will, should Arthur elect under clause " fourth " to accept the farm " as [equal to] his share of the estate," the remainder which consisted of the bank accounts and debts owed to the estate should be divided equally between Edith and George.

At the hearing before the Surrogate, Arthur filed a written consent whereby he has agreed to accept the farm as his share of the estate subject to the conditions and privileges imposed thereon in favor of his brother George.

The Surrogate held that the true intent and purpose of the testatrix was to devise the homestead to her son Arthur if he agreed to accept the same as his share of the estate of the testatrix, subject to the rights therein given to the son George. The Appellate Division reversed and held that the intent shown by the will was to grant to the son Arthur

the right to purchase the real property subject to the use granted by the testatrix to her son George, and that the proceeds representing the purchase price should be considered a part of the estate for the purpose of an equal distribution thereof in accordance with paragraph "fifth." We are in accord with the intent of the testatrix as found by the Surrogate.

We apply to this will the primary rule of construction, namely, that the intent of the testator must govern (*Matter of Chalmers*, 264 N. Y. 239; *Matter of Rooker*, 248 N. Y. 361), and that this intention of the testator must be garnered from the words of the will. (*Matter of Durand*, 250 N. Y. 45, 54; *Matter of Buechner*, 226 N. Y. 440.) If the testatrix expressed herself in ambiguous language, we endeavor to impute to the words used such meaning as will conform to the intention of the testatrix viewed in the light of the pattern upon which the will was executed. (*Matter of Mildeberger*, 122 Misc. Rep. 743; affd., 212 App. Div. 727; affd., 241 N. Y. 528.)

The decision of the Surrogate, the opinion of the Appellate Division and the testimony in the record show that the first thought of the testatrix was for the continued welfare of her son George, after her decease. George had lived upon the farm all his life. For twenty years he had worked there. Naturally it was for his best interest to remain and continue the life he was accustomed to live. Arthur had managed the farm. He was the owner of the tools and personal property used in its operation. Since Arthur had operated the farm, he was the one to continue such operation. In order to provide most securely for the welfare of the son George, it was natural that the mother should desire Arthur to operate the farm with the help of George and continue to look after George in the manner in which George had theretofore lived. The "third" clause of the will, in which the testatrix bequeathed to Arthur the other one-half of the farm tools and implements necessary to work the farm, shows unmistakably the desire of the decedent that Arthur should continue to operate the farm.

In brief, the testatrix has shown her intent to provide a home and protection for George. The daughter was married and lived with her husband and children elsewhere. In order to carry out this clear intent, the testatrix gives to her son George the use and occupation of that portion of the farmhouse in which his mother and he had resided, together with the use of the furniture and bedding contained in this portion of the farmhouse, and with sufficient space in the garage for his automobile " as the same is now being used and occupied by him." This was the only practical method by which testatrix could insure a home for George after her decease. Obviously the testatrix could not compel Arthur to continue to operate the farm if he did not so desire. So the testatrix provided that if Arthur did not desire to retain the farm as his share of the estate, then the property must be sold. In such event George could not live there alone and hence the use and occupation of the premises, in so far as given to George, is limited by the acceptance of Arthur of the farm as his share of the estate. In the " fifth " paragraph the testatrix provided that all the rest, residue and remainder of the estate was given in equal shares to the three children.

In order to sustain the result which was applied by the Appellate Division, the respondent urges that the words of the testatrix in paragraph " fourth " of her will, " as his share," should be interpreted to mean " applied towards his share as far as the share of Arthur in her estate would permit." We see no occasion either to delete the words " as his share of the estate," or to interpret them otherwise than in their ordinary meaning. The interpretation suggested, namely, " to be applied towards his share " practically negatives the words used, namely, " as his share of the estate." The value of the farm when considered in connection with the rights given to George could not differ widely from the value of the share going to each of the other children, under the construction given to the will by the Surrogate. Such a construction would not require the addition or deletion of any words, nor an interpretation

other than the use of the words in their ordinary meaning. Furthermore, there is no provision in the will which provides that Arthur should pay any definite sum for the farm, nor how such sum should be determined. The difficulty of determining the value of the farm subject to the restrictions thereon in favor of George is a potent argument, if one were required, to give the words " retain said premises as his share of the estate " a meaning not different than would ordinarily be gleaned from the use of such words. Moreover, there is no provision for the sale of the real property unless Arthur decline to retain it as his share of the estate. He has duly elected to accept the property in question subject to the restrictions in favor of George. Only in the event that Arthur failed in the confidence imposed in him were the limitations to be lifted, the property sold and the proceeds distributed among the children according to the provisions of paragraph " fifth " of the will. We find that the intent of the testatrix is shown by the words used and that Arthur, having filed the necessary consent, is the owner in fee of the real property subject to the restrictions in favor of George.

It follows that the order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division to the appellants payable out of the estate.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.