Bergan, J.
The will of Frances A. English, executed April 13, 1937, gave all her property to her husband William M. English. *149 It contained further provision that: “In the event of my accidental death, contemporaneously or approximately contemporaneously with my said husband, William M. English,” the property was to go to John L. English, her husband’s brother, who in that event was also named executor, to be held in trust for the benefit of her father Randall Follett, upon whose death the residue unused would go to the brother and the sisters of her husband.
The husband’s will, executed the same day, contains identical provisions. The husband died December 7, 1947. Three weeks later, December 28, 1947, testatrix herself died. The father of testatrix, Randall Follett, for whom the life trust was set up in the will had died before testatrix.
John L. English petitioned the Surrogate for probate of the will. The petition does not allege that death of testatrix was accidental. A cross petition was made by Fred G. Follett of California, the uncle of testatrix and her only distributee, which alleges that her death was not accidental; therefore, the cross petitioner argues that the legacies to the relatives of the husband of testatrix, depending on her accidental death contemporaneously with her husband, have lapsed.
Before the Surrogate it was contended by petitioner English that testatrix had not intended to use the word “ accidental ” in connection with her death; that both she and her husband had in mind leaving all their respective property to the survivor of them as the wills each made show; that if they died about the same time they intended to take care of Mrs. English’s father Randall Follett while he lived and at his death to distribute what was left among the brother and three sisters of Mr. English.
The draftsman of the two wills, a lawyer, testified these were the instructions given him by Mr. and Mrs. English in 1937, when he prepared the wills. He made no reference in his direct testimony to the manner in which the word “ accidental ” found itself in the texts; he testified it was there and the testator and testatrix both read the instruments containing the word “ accidental ”.
Testatrix was friendly with her husband’s brother and sisters ; she may not even have known her father’s brother, Fred Gr. Follett, who seems to be her sole distributee in case of intestacy, was still living.
From all this it is argued that the word “ accidental ’’was mistakenly written into the testamentary text, although the draftsman does not say this unequivocally; that the true intent *150 of the testatrix was that if she and her husband died contemporaneously the trust for her father would exist with her husband’s kin taking the remainder; that the two deaths twenty-one days apart fall within the intent; and that therefore the conditions creating a remainder for the English relatives are in existence.
The Surrogate has rejected this argument, and, holding the death of testatrix was not accidental, has ruled that the clause disposing of the residuary estate to the English family is ineffective and that the estate should be distributed as in intestacy, i.e., to the uncle of testatrix in California.
There seems to us to be no ground in this record to support so radical an excision from this will as to remove the word “ accidental ” from its surrounding context, and to say testatrix could not have meant and did not mean “ accidental ” as well as contemporaneous death, but meant only contemporaneous death.
The draftsman of the will did not go so far as this; and no court has, as far as we have noted, assumed in a revisionary and corrective mood so confidently to speak the testamentary mind.
It is argued that the relationship of the testatrix to her own family and that of her husband was such that she would normally have been expected to make provision for the English family after her own father’s decease. But the logic of what she might have said is not a counterweight to what she did say. The meaning of “ accidental ” is not generally or in this context open to debate.
It is a universal canon of Construction in all courts and in all States that plain language in a will is not to be refined into other meanings either by extrinsic evidence or judicial construction (see cases collated in 69 C. J., Wills, § 1177 et seq.). The New York courts have kept themselves carefully within this rule, and they have been quick to abnegate the implication of any broader power.
In a noted sentence and in a somewhat similar situation, Crane, J. wrote: “ This is what the lawyer who drew the will has caused Miss Watson to say is her intention,” adding in language of marked precision a summary of the rule: “ We take wills as we find them, and, unless contrary to some statute, give them effect as written.” (Matter of Watson, 262 N. Y. 284, 299.)
The rule, often stated, was reiterated there, that canons of construction are not invoked in the absence of doubtful or *151 ambiguous language. A good illustration appears in Matter of Wells (113 N. Y. 396, 402) where Gray, J. emphasized the rule that ordinary words must be read in their ordinary sense, a view again stated many years later by Finch, J. in Matter of Sliter (286 N. Y. 117, 123).
There are, of course, cases where judges have struggled with the meaning of words and phrases either in themselves or in their context, and felt under the compulsion of necessity to bring some order out of ambiguity by a reading of the whole instrument. Matter of Nelson (268 N. Y. 255, 258-259); Matter of Rooker (248 N. Y. 361); Close v. Farmers’ Loan & Trust Co. (195 N. Y. 92); Greene v. Greene (125 N. Y. 506, 509); Roe v. Vingut (117 N. Y. 204); and Phillips v. Davies (92 N. Y. 199, 208) illustrate one aspect or another of this problem.
Sometimes it arises from the undisputed nature of the subject of the testamentary disposition (Underhill v. Vandervoort, 56 N. Y. 242). But a mere argument for ambiguity does not make one; it must exist in the language itself and if the ambiguity is not demonstrated the words are followed (Bradhurst v. Field, 135 N. Y. 564).
This is not a case where illiteracy or ignorance causes a mistaken use of words of technical implication. (Miller v. Gilbert, 144 N. Y. 68.) It is not an “ and ” or “ or ” case (Roome v. Phillips, 24 N. Y. 463, 470). (Cf. Matter of Gallien, 247 N. Y. 195, 201.) We see no ground to treat the words “ accidental death ” in other than their accustomed sense. (Matter of Winburn, 265 N. Y. 366, 374-375.)
Moreover the words “ contemporaneously ” or “ approximately contemporaneously ” in connection with the death of a husband and wife would suggest in themselves some accident or common disaster or tragedy; contemporaneous natural deaths are matters of rare coincidence.
Unless the deaths of both were thus sudden and coincidental, even if not accidental, the intent of both husband and wife to leave the survivor free to make other dispositions of property or to leave things alone and allow the rule of intestacy to operate is perfectly clear, and there is nothing to suggest that in the three weeks between the death of the husband of testatrix and her own death she was not able to and did not make up her mind in this respect.
The test of the intent with which the word “ contemporaneous ’ ’ was used in both wills is whether during this twenty-one-day period testatrix had control of her husband’s estate. It may *152 be doubted that the deaths at this distance apart occurred contemporaneously, or approximately so, within the intent of the man and woman who together used this language.
After the appeal was taken here, the proponent-appellant English moved in this court for an order in pursuance of section 309 of the Surrogate’s Court Act, to receive further testimony and documentary evidence. The purpose of this testimony, so the moving papers indicate, is to show that testatrix’ death was due to a heart condition induced by a strain and hence was “ accidental ”.
The significance of this, so it is contended, was not fully known at the time of the hearing before the Surrogate. This material is in the nature of newly discovered evidence.- The application ought to go to the Surrogate and not to be determined here in the first instance.
The Legislature has the constitutional power to vest in the several Appellate Divisions “ original ” as well as “ appellate ” jurisdiction. (N. T. Const., art. VI, § 2); but the main constitutional function is to determine appeals as the history and origin of the court suggest.
In hearing proof an Appellate Division lies under some disabilities inherent in the mechanics of its structure. As a court it must sit in banc. The attention of at least four justices must be occupied in the process of hearing proof (art. VI, § 2). The alternative, which section 309 of the Surrogate’s Court Act, offers, is to appoint a referee, but his report in turn must be reviewed by the court.
These methods are either unduly time-consuming or circuitous when there are already available the facilities of a competent court established by the Constitution to hear such proof and to pass upon it; there is at least no pressing necessity to resort to the alternative and more cumbersome procedure that is also available here. We would suppose that proof de novo in an Appellate Division would be invoked only by an unusual case which the motion presented here does not suggest. See by way of comparison the view taken in the First Department in Matter of Bates (256 App. Div. 669).
The decree of the Surrogate should be affirmed and the motion addressed to this court to take further testimony on the ground of newly discovered evidence should be denied without prejudice to its renewal before the Surrogate by appropriate motion.
Foster, P. J., Heeeernan and Deyo, JJ., concur; Brewster, J., dissents, in part, in. the following memorandum: I dissent from *153 an affirmance of the decree. I agree that the expression of the contingency of accidental death may not be excised. However, it is clearly shown that whatever property or estate was within the reach of her will the testatrix desired it to go to the brother and sisters of her husband after her father’s death. The last paragraph of her will which makes provision to that effect may,, I think, be considered independent of the nonhappening of the priorly expressed contingencies which would have defeated or postponed the vesting of title; and, to that extent the will and desire of the testatrix be upheld and effectuated.
Decree affirmed, with costs to all parties filing briefs, payable out of the estate, and motion to take further testimony denied without prejudice to its renewal before the Surrogate.